EDGAR T. BRACKETT, as Administrator, etc., Respondent, *v.* CHESTER GRISWOLD, Impleaded, etc., Appellant.

The principles which govern an action for fraud and deceit by means of false pretenses are the same, whether the fraud is alleged to have originated in a conspiracy, or to have been solely committed by a defendant without aid or co-operation.

An allegation in the complaint that there was a conspiracy to commit the fraud does not affect the substantial ground of the action ; it may be wholly disregarded and a recovery had, irrespective thereof, where guilty participation of the defendant is otherwise shown.

Proof of the conspiracy is only important to connect defendant with the transaction and to charge him with the acts and declarations of his co-conspirators, where otherwise he could not have been implicated.

The essential constituents of such an action are a false representation, known to be such, made or authorized or caused to be made by defendant, calculated and intended to influence the action of others, which came to the knowledge of plaintiff and in reliance upon which he, in good faith acted, and thus suffered the injury of which he complains. The absence of any one of these particulars is fatal to a recovery.

General reputation of solvency is an insufficient ground of reliance by a person who has purchased securities in the market, although that reputation may have sprung from the conduct of defendant or general representations of solvency made by him; there must be a specific representation shown, which came to the plaintiff's knowledge, upon which he relied and so suffered the injury.

Where, therefore, in an action by one who purchased notes issued by a corporation, against the directors of the corporation, for alleged fraud and conspiracy to induce the public, by means of false representations as to its financial condition, to purchase its stock and papers, there was no evidence that the purchaser, in making the purchase, relied upon any representations made by defendants; but, on the contrary, it affirmatively appeared that he was at the time wholly ignorant of the alleged fraudulent scheme, or of any acts or representations of the defendants or other parties to the alleged conspiracy, and that he took the notes on the assurances of the vendor and of the treasurer of the corporation, who was not charged as one of the co-conspirators, or shown to have any connection with the fraud, that it was responsible and the notes would be paid, *held,* that the action was not maintainable; and that the the declarations of treasurer were inadmissible to charge the defendants.

(Argued October 5, 1889; decided March 5, 1889.)

Appeal by defendant Chester Griswold, from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 22, 1888, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was commenced in 1873. The original defendants were six of the seven trustees of the " Iron Mountains Company of Lake Champlain," a corporation incorporated on the 6th day of August, 1869, by the filing on that day of a certificate under and in pursuance of the act (Chap. 40 of the Laws of 1848), known as the Manufacturing Corporations Act. The certificate was in due form, setting forth that the company was organized for the mining, manufacture and sale

of iron and other ores ; that the business was to be carried on in the towns of Westport and Elizabethtown, in the county of Essex, and in the city of New York; that the capital stock was to be $2,000,000, divided into twenty thousand shares; that the company was to continue fifty years and that the six defendants, together with one John A. Griswold (who died before the commencement of the action), should be trustees of the company for the first year.

The complaint contains three causes of action. The first is founded on the alleged failure of the trustees to file a report as required by law, and to enforce in behalf of the plaintiff, a creditor of the company, the statutory liability arising from such failure imposed by the twelfth section of the act of 1848. The second cause of action is framed under the fifteenth section, and sought to charge the defendants on the ground that the report of the company, made and filed January 13, 1870, in assumed compliance with the twelfth section, was false in representing that the capital stock of $2,000,000 had been paid up in full. The third cause of action set forth a conspiracy between the defendants to form a sham corporation to defraud the public and the plaintiff, whereby the plaintiff was deceived and defrauded into giving credit to the company to his injury.

The case was first tried by consent before the court without a jury, and judgment was rendered against the defendants on the first cause of action for failure to file a report, but the court found in their favor on the second and third causes of action, the latter being the conspiracy count. This judgment was reversed by this court on the appeal of the defendants (80 N. Y. 128.) The case was again tried before the same judge who rendered judgment against defendant, Chester Griswold, on the second count, on the ground that the report of January 13, 1870, which he, with other trustees, had signed was false, but finding in his favor on the first and third counts. This judgment was also reversed by this court. (89 N. Y. 122.) The action was next tried before a jury and resulted in a disagreement. The action was then tried before a judge without

a jury, who found in favor of the plaintiff on the first and second counts, but in favor of the defendant, Chester Griswold, on the third or conspiracy count.

Before judgment was actually rendered the original plaintiff died, and by an order of the Supreme Court the action was revived and continued in the name of his administrator, the present plaintiff. Judgment was then entered for the plaintiff on the decision of the trial court, and the defendants appealed from both the judgment and order of revivor, and both were reversed in this court on the ground that, by the death of Bonnell (the original plaintiff), the causes of action based on the statutory liability abated (103 N. Y. 425), but the court granted a new trial as to the third count. The action was then tried for the fifth time before a jury on the third or conspiracy count, and resulted in a verdict for the plaintiff against the present appellant for $11,780.95, and from the judgment entered therein this appeal is taken.

The third count alleged, in great detail, a fraudulent combination between the original defendants and John A. Griswold to organize the "Iron Mountains Company of Lake Champlain" with a nominal capital of $2,000,000, and to issue the whole stock to the "Kingdom Iron Ore Company" in pretended payment of about thirteen hundred acres of undeveloped mining land in the county of Essex, owned by the latter company, worth not to exceed the sum of $50,000, which lands they were to cause to be conveyed to the new corporation, and in which, it is alleged, the defendants and John A. Griswold, as stockholders in the "Kingdom Iron Ore Company," were interested. It is alleged that this device of purchasing the lands by the new corporation for a sum vastly exceeding their value was resorted to to enable the defendants to represent to the public that the whole capital stock of the new corporation had been paid in full, and that, as a part of the fraudulent scheme, persons of known financial and business ability, engaged in the mining and manufacture of iron, were to be made trustees of the company.

The complaint avers that the " Iron Mountains Company of Lake Champlain " was organized pursuant to this conspiracy; the purchase and transfer of the lands of the "Kingdom Iron Ore Company " in exchange for the stock of the former company, and the selection of trustees of the new corporation, and alleges that these and other acts of the defendants, specified, in organizing and setting on foot the new corporation, were done "for the purpose of inducing credit to said new company and inducing the public and individuals to loan money to and furnish materials for said new company, and to purchase its bonds, notes and other securities or evidences of indebtedness." It sets forth that, in further pursuance of the conspiracy, the defendants falsely published, advertised and represented "to the public at large and to the plaintiff that the capital stock of the company was $2,000,000, and that the said stock was paid up in full, and that the company was entirely solvent and responsible, and had immense resources in its mines, lands and other property," and refers expressly to the annual report of the company, filed January 13, 1870, which stated that the stock had been paid up in full, which statement, it alleges, was knowingly false and untrue.

It appears, from the complaint and evidence, that on the 12th of March, 1870, the "Iron Mountains Company" issued to the "Birmingham Iron Foundry," of Connecticut, its two notes, payable, respectively, at four and six months in the aggregate for $5,511.66, in consideration of machinery theretofore sold by the foundry company to the "Iron Mountains Company," which notes the payee, before maturity, transferred to Bonnell in exchange for coal. The foundry company, when it applied to Bonnell to take the notes in exchange for coal, represented to him that they were good, but advised him to inquire of one Ellis, the treasurer of the "Iron Mountains Company," whose office was in the city of New York. Bonnell inquired of Ellis as to the responsibility of the company, and was informed by him that the company was good and the notes would be promptly paid at maturity. Upon receiving this information he consented to take the notes in payment

for coal to be delivered, and afterwards took them, but up to that time he supposed the notes were made by the "Iron Mountains Company of Missouri," but before the transaction was completed ascertained that they were the notes of the New York corporation. The complaint alleges that the "Birmingham Iron Company and the plaintiff were induced to become creditors of said company by said representations so made by said defendants and said John A. Griswold before mentioned, which he relied upon, and also confiding in the general reputation of said company produced by said representations and report made to the public at large, and believing, in consequence of the premises that said company was possessed of an actual paid-up capital of $2,000,000, and also induced thereto by the fact that said trustees were represented as being interested in said company and were men of large means," etc. There is no evidence of the circumstances under which the notes were taken by the "Birmingham Iron Foundry," except that they were taken for machinery sold. Bonnell testified that when he took the notes he did not know who were stockholders or officers in the "Iron Mountains Company," except that Ellis was treasurer, nor the amount of its capital stock and had never seen the "prospectus," nor any report of the company; in short, that he knew nothing whatever in respect to its property or condition, its officers or stockholders, or of any of the representations made by the defendants or the company.

The complaint avers the insolvency of the company, that the notes have never been paid, and it appears from the evidence that the company was adjudicated a bankrupt in August, 1871, and that its whole property purchased of the Kingdom company was sold in 1876, on a foreclosure of the trust mortgage, for about $5,000.

*William C. Holbrook* for appellant. Although a conspiracy is alleged in the third count, the supposed cause of action there stated is that which, at common law, would have been termed an action on the case, in the nature of a conspiracy, the gist of

which is the damage and not the conspiracy. (Addison on Torts, 739, 740; *Saville* v. *Roberts*, 1 Ld. Raym. 378; *Hutchins* v. *Hutchins*, 7 Hill, 104; *Jones* v. *Baker*, 7 Cow. 445; *Tappan* v. *Powers*, 2 Hall, 277; *Forsyth* v. *Edminston*, 11 How. Pr. 408; *Laverty* v. *Van Arsdale*, 65 Penn. St. 507; *Herron* v. *Hughes*, 25 Cal. 555; 2 Hilliard on Torts [4th ed.] 256; *Livermore* v. *Herschell*, 3 Pick. 33; *Parker* v. *Huntington*, 2 Gray, 124–127.) Mere general allegations of fraud or conspiracy are of no value as stating a cause of action; the overt acts themselves which result in actual damage are the only grounds of action. (*Wood* v. *Amory*, 105 N. Y. 278; *Adler* v. *Fenton*, 24 How. [U. S.] 407; *Findley* v. *McAllister*, 113 U. S. 104; *Commonwealth* v. *Harley*, 7 Met. 506.) The court erred in admitting subsequent acts and declarations from which the jury was allowed to infer the existence of a conspiracy, before requiring proof of a fraudulent combination in the first instance. (*Cuyler* v. *McCartney*, 40 N. Y. 221; *Newlin* v. *Lyon*, 49 id. 661; *People* v. *Davis*, 56 id. 96; *Dewey* v. *Moyer*, 72 id. 70, 80; *O'Brien* v. *McNulty*, 122 Mass. 474; *Chaffee* v. *U. S.*, 18 Wall. 516; *Ocean Bank* v. *Carll*, 55 N. Y. 440; *Maxwell* v. *Wilkinson*, 113 U. S. 656; *Clawson* v. *State of Ohio*, 14 Ohio St. 234; *Baird* v. *Mayor, etc.*, 18 Week. Dig. 39; *State of Missouri* v. *Duncan*, 67 Mo. 262; *Wakeman* v. *Dalley*, 51 N. Y. 27; *Arthur* v. *Griswold*, 55 id. 400.) In admitting the prospectus, a fatal error was committed. (55 N. Y. 406; *Arthur* v. *Griswold*, 55 id. 400–406; *Wakeman* v. *Dalley*, 51 id. 27; *Weir* v. *Barnett*, 3 L. R., Ex. Div. 32, 238; *Cargill* v. *Bower*, Eng. L. R., 10 Ch. Div. 502; *Van Weel* v. *Winston*, 115 U. S. 222.) The alleged conspiracy must be deemed to have terminated at the time the company was adjudged bankrupt, and subsequent proceedings and matters were wholly inadmissible, especially as defendant was not shown to be a party to any one of them, or to have actual knowledge of any of them, other than the subsequent annual reports. (1 Greenleaf on Ev. § 233; *State of Missouri* v. *Duncan*, 64 Mo. 262; *Laytham* v. *Angel*, 70 id. 48; *Sanborn* v. *Lefferts*, 58 N. Y. 179.) Recitals of the

consideration in a deed are not admissible to prove value as against persons not parties thereto. (*Hardenburgh* v. *Larkin*, 47 N. Y. 109; Wharton on Ev. § 1042; *Rose* v. *City of Taunton*, 119 Mass. 99, 107.) The testimony of Burleigh and Merriam, as to value, was incompetent. (*Schenck* v. *Andrews*, 57 N. Y. 133; *Boynton* v. *Andrews*, 63 id. 94.) The mere fact that defendant was elected trustee at the first meeting, or named in the certificate of incorporation as such, did not alone invest him with that character so as to charge him with the responsibilities and duties of the office. (*Cameron* v. *Seaman*, 69 N. Y. 396; *Moore* v. *Burke*, 4 F. & F. 258; *Wakeman* v. *Dalley*, 51 N. Y. 27; *Arthur* v. *Griswold*, 55 id. 400, 406.) Even assuming that there was competent evidence that defendant had made the representations as alleged, plaintiff should have been nonsuited, inasmuch as he testified that he did not rely upon them. (*Taylor* v. *Guest*, 58 N. Y. 262; *Nelson* v. *Luling*, 36 Supr. Ct. [J. & S.] 544; 62 N. Y. 645; *Morgan* v. *Skiddy*, 62 id. 319; *Mabie* v. *Adams*, 3 Bosw. 346.) The testimony of the defendant which is not contradicted or impeached, abundantly shows that all that he did in connection with the Iron Mountains company was done in good faith, and that there was no intent on his part to deceive or defraud plaintiff's intestate or any one else. (*Brockway* v. *Ireland*, 61 How. Pr. 372; *L. S. I. Co.* v. *Drexel*, 90 N. Y. 87; *Shrewsbury* v. *Blount*, 2 Scott's N. R. 588.)

*B. H. Bristow* for appellant. No cause of action for fraud has been established against defendant. (*Arthur* v. *Griswold*, 55 N. Y. 400, 405, 407, 408, 409; *Meyer* v. *Amidon*, 45 id. 169; *Wakeman* v. *Dalley*, 51 id. 27; *Lefler* v. *Field*, 52 id. 621; *Lord* v. *Goddard*, 13 How [U. S.] 198, *Ellis* v. *Andrews*, 56 N. Y. 83; *Gray* v. *Palmer*, 2 Robt. 500; 56 N. Y. 85; *Small* v. *Boudinot*, 1 Stockt. 381.) There can be no recovery upon the ground of the conspiracy alleged. (*Arthur* v. *Griswold*, 55 N. Y. 400, 405; *Wakeman* v. *Dalley*, 51 id. 27, 30; 3 Bulstr. 96; *Taylor* v. *Guest*, 58 N. Y. 262, 266; *Clarke* v. *White*, 12 Peters, 178; *Garrow* v. *Davis*, 15

How. [U. S.] 272; *Slaughter* v. *Gerson*, 13 Wall. 379; *Wood* v. *Amory*, 105 N. Y. 281, 282; *Kiff* v. *Youmans*, 86 id. 324, 329; *Phelps* v. *Nowlen*, 72 id. 39, 45; *Stevenson* v. *Neureham*, 13 C. B. 285; *Adler* v. *Fenton*, 24 How. [U. S.] 407, 410; *Randall* v. *Hazelton*, 12 Allen, 418; *Wellington* v. *Small*, 3 Cush. 145; *Bradley* v. *Fuller*, 118 Mass. 239; *Heywood* v. *Tillson*, 75 Me. 373; *Jenkins* v. *Fowler*, 24 Pa. St. 308; *Glendon* v. *Uhler*, 75 id. 477; *S. R. Bk.* v. *S. Bk.*, 27 Vt. 505; *Hunt* v. *Simond*, 19 Mo. 583; *Mahan* v. *Brown*, 13 Wend. 261; *Pickard* v. *Collins*, 23 Barb. 444; *Morgan* v. *Skiddy*, 62 id. 319; *Van Weel* v. *Winston*, 115 U. S. 228; *Peek* v. *Gurney*, L. R., 6 H. L. C. 377; *Cohn* v. *Goldman*, 76 id. 284; *Knapp* v. *City of Brooklyn*, 97 id. 520; *Hutchins* v. *Hutchins*, 7 Hill, 104; *Verplanck* v. *Van Buren*, 76 N. Y. 247; *Tappan* v. *Powers*, 2 Hall, 277; *B. L. O. Co.* v. *Everest*, 30 Hun, 586; *Parker* v. *Huntington*, 2 Gray, 124; *Randall* v. *Hazelton*, 12 Allen, 412; *Stevins* v. *Rowe*, 47 N. H. 578; *Kimball* v. *Harmon*, 34 Md. 407, 409; *Jones* v. *Baker*, 7 Cow. 445; *Forsyth* v. *Edminston*, 11 How. Pr. 408; *Ross* v. *Wood*, 70 N. Y. 8, 12; *Gardiner* v. *Pollard*, 10 Bosw. 674, 687; *Laverty* v. *Vanarsdale*, 65 Pa. St. 507; *Livermore* v. *Herschell*, 3 Pick. 33; *Queen* v. *Aspinwall*, 2 Q. B. Div. 58; 19 Moak. 207; *Comm.* v. *Warren*, 6 Mass. 74; *Place* v. *Minster*, 65 N. Y. 89; *Bartholomew* v. *Bentley*, 15 Ohio, 659; 1 Ohio St. 37; *Hubbell* v. *Meigs*, 50 N. Y. 480; *Morehouse* v. *Yeager*, 71 id. 594; *Morse* v. *Swits*, 19 How. Pr. 275; *Newberry* v. *Garland*, 31 Barb. 121; *Clarke* v. *Dickson*, 6 C. B. [N. S.] 453; *Jarrett* v. *Kennedy*, 6 C. B. 319; *Bedford* v. *Bagshaw*, 4 H. & N. 538; *Peek* v. *Gurney*, L. R., 6 H. L. C. 377.) A recovery must still depend upon the rule in actions for fraud, namely, "that it must be shown that the person charged made the representations alleged; that they were false to his knowledge; and that the representations were relied upon and were the inducing cause for parting with the property." (*Arthur* v. *Griswold*, 55 N. Y. 400, 405; *Wakeman* v. *Dalley*, 51 id. 27; *Morgan* v. *Skiddy*, 62 id. 319; *Van Weel* v. *Winston*, 115 U. S. 228.)

*Richard L. Hand* for respondent.    In conspiracies there is no occasion to prove the actual fact of conspiring, but it may be collected from collateral circumstances.    (*King* v. *Parsons*, 1 Black. 392; *People* v. *Mather*, 4 Wend. 229; *Verplanck* v. *Van Buren*, 76 N. Y. 247; *Kelly* v. *People*, 55 id. 565; *Lincoln* v. *Claflin*, 7 Wall. 132; *Place* v. *Minster*, 65 N. Y. 89; *Kimmell* v. *Getting*, 2 Grant, 125.)    As the defendant knew the fraudulent character of the scheme and concurred in and aided the execution of it, the verdict against him is justified, even if there could be any doubt as to his participation in its origin.    (1 Greenl. on Ev. § 111; *People* v. *Mather*, 4 Wend. 229; *Warshaner* v. *Webb*, 9 N. Y. S. R. 530; *Lincoln* v. *Claflin*, 7 Wall. 132; *Blake* v. *Griswold*, 103 N. Y. 429.)    No privity of contract between the plaintiff and defendant is required in an action for fraudulent conspiracy (*Morse* v. *Swits*, 19 How. Pr. 275; *Newbery* v. *Garland*, 31 Barb. 121; *Tracy* v. *Yates*, 18 id. 152; *Queen* v. *Aspinwall*, L. R., 2 Q. B. Div. 48, 730; 19 Moak, 198; 18 id. 152; *Bartholomew* v. *Bentley*, 15 Ohio, 659; 45 Am. Dec. 596; *Vose* v. *Grant*, 15 Mass. 519; *Place* v. *Minster*, 65 N. Y. 89; *Hubbell* v. *Meigs*, 50 id. 480; *Watson* v. *Earl Charlemont*, 12 Q. B. 856; *Jarrett* v. *Kennedy*, 6 C. B. 319; *Clarke* v. *Dickson*, 6 C. B. [N. S.] 453; *Bradley* v. *Poole*, 98 Mass. 169; *Arthur* v. *Griswold*, 55 N. Y. 400, 407.)    It was competent to establish the conspiracy itself by circumstantial evidence, by concurrent action having a similar tendency.    (*King* v. *Parsons*, 1 Black. 392; *People* v. *Mather*, 4 Wend. 229; *Kelly* v. *People*, 55 N. Y. 565; *Comm.* v. *Scott*, 123 Mass. 222; 25 Am. Rep. 81; *Lincoln* v. *Claflin*, 7 Wall. 132; *Kimmell* v. *Getting*, 2 Grant, 125; *Dewey* v. *Moyer*, 72 N. Y 70; *A. F. Co.* v. *U. S.* 2 Pet. 365; *Bruce* v. *Kelley*, 39 Super. Ct. 27; *McCarney* v. *People*, 83 N. Y. 414–417; *Nudd* v. *Burrows*, 91 U S. 426, 428; Stephen's Dig. Law of Ev. [Chase's ed.] 10; Id. note 3, 250; *Anarchists' Case*, 12 N. E. R. 865.)    Depositions in a cause where either plaintiff or defendant were parties may be read as evidences against such plaintiff or defendant (Viner's Abridg. Ev. *A. b.* 31, pl. 47; *Morehouse* v. *Morehouse*,

41 Hun, 146; *P. & C. Co.* v. *Howard,* 13 How. [U. S.] 307; *Wright* v. *Tatham,* 1 Ad. & El. 3.) Assignability and survivability are convertible terms, and an assignable cause of action always survives to the personal representatives. (*People* v. *T. C. P.,* 19 Wend. 77; *Hegerich* v. *Kiddie,* 99 N. Y. 258.) A cause of action for the liability of a trustee to pay the debt of his corporation is assignable. (*Bolen* v. *Crosby,* 49 N. Y. 183; *Hoag* v. *Lamont,* 60 id. 96; *Pier* v. *George,* 86 id. 613; *Stokes* v. *Stickney,* 96 id. 323; *Bonnell* v. *Griswold,* 80 id. 128.) Whatever cause of action is assignable passes to the personal representative. (*Zabriskie* v. *Smith,* 3 Kern. 333.) The statutory liability is to pay the debt, and it matters not who is the owner thereof or how he became such. (Laws of 1848, chap. 40, § 15; Boone on Neg. § 393; *Stokes* v. *Stickney,* 96 N. Y. 323; *Benjamin* v. *Smith,* 17 Wend. 208.)

*A. Pond* for respondent. To constitute an indictable conspiracy there must be a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means. (Burrill's Law Dic. title, Conspiracy; 2 Arch. Cr. Pl. [Whar. Notes] 1024.) The fact of conspiring need not be proved, if parties concur in doing the act, although they were not previously acquainted with each other, it is a conspiracy. (*People* v. *Mather,* 4 Wend. 230; *R. P. A. Co.* v. *Warren,* 1 Week. Dig. 204; *Fuller* v. *Robinson,* 10 id. 487; *Morehouse* v. *Yeager,* 71 N. Y. 594; *Hubbell* v. *Meigs,* 50 id. 480, 486; *Rix* v. *Orman,* 28 Eng. R. [Moak] 610; *Reg.* v. *Aspinall,* 19 id. 198; *Reg.* v. *Taylor,* 36 id. 555; *Reg.* v. *Murphy,* 8 C. & P. 297; *McCarney* v. *People,* 83 N. Y. 408; 3 Greenl. Ev. § 93.) A conspiracy may be proved by circumstantial evidence, and parties performing disconnected overt acts, all contributing to the same result, may, by the circumstances and their general connection or otherwise, be satisfactorily shown to be confederators in the commission of the offense. (*Kelly* v. *People,* 55 N. Y. 566: *People* v. *Tweed,* 5 Hun, 353;

*Comm.* v. *Warren*, 6 Mass. 73.) The rule is the same as to the civil action on the case in the nature of conspiracy. ( *Verplanck* v. *Van Buren*, 76 N. Y. 247, 259, 260 ; *Place* v. *Minster*, 65 id. 89 ; *Livermore* v. *Herschell*, 3 Pick. 33 ; *Adams* v. *Paige*, 7 id. 541 ; *C. A.* v. *Sutton*, 2 Atk. 400, 402 ; *Hun* v. *Cary*, 82 N. Y. 65, 73 ; *Hubbell* v. *Meigs*, 50 id. 480, 486 ; *R. P. A. Co.* v. *Warren*, 1 Week. Dig. 204 ; *Fuller* v. *Robinson*, 10 id. 487 ; *Morehouse* v. *Yeager*, 71 N. Y. 594 ; *Kimmell* v. *Getting*, 2 Grant [Pa.] 125 ; *Bradley* v. *Poole*, 98 Mass. 169 ; *Bartholomew* v. *Bentley*, 15 Ohio, 659 ; 1 McCook, 37.) Assuming the stock had been paid up in full, by mining property having been conveyed to the company therefor, it was false because it was not so stated in the report as required by the statute, and because so stated it implied a payment in cash. (Laws of 1853, chap. 333, § 2 ; *Pier* v. *Hanmore*, 86 N. Y. 95 ; *Bonnell* v. *Griswold*, 89 id. 101, 102.) The evidence of each trustee that his stock was donated to him, and the acts of the defendant in disposing of the company's stock, as though it was actually worthless, warranted a finding by the jury that it, as well as the corporation itself, was bogus, and that the annual report of 1870 was falsely and incorrectly made. (*Briggs* v. *Waldron*, 83 N. Y. 582, 585 ; *Morgan* v. *Skiddy*, 62 id. 319 ; *Brackett* v. *Griswold*, 39 Hun, 652 ; 103 N. Y. 425, 429, 435, 436 ; *Bonnell* v. *Griswold*, 89 id. 124, 126 ; *Queen* v. *Aspinall*, 19 Eng. R. [Moak] 198 ; 1 Greenl. Ev. § 111 ; *Card* v. *State*, 109 Ind. 415 ; Wharton's Crim. Ev. § 32 ; *Kelly* v. *People*, 55 N. Y. 566 ; *Regina* v. *Orman*, 28 Eng. R. [Moak] 610 ; *Case* v. *Phelps*, 39 N. Y. 164 ; *Arthur* v. *Griswold*, 55 id. 400, 406, 407.) The books and records of the two corporations were competent evidence against stockholders and officers of the corporation, and they are chargeable with a knowledge of their contents. (1 Greenl. Ev. § 493 ; *Humphrey* v. *People*, 18 Hun, 393 ; *A. C. Bk.* v. *Albany*, 93 N. Y. 363, 367 ; *Blake* v. *Griswold*, 103 id. 429, 434, 436 ; *Morehouse* v. *Morehouse*, 41 Hun, 146.) The evidence of the defendant's surveyors and experts, Arnold,

Case and Maynard, was wholly immaterial. (*Hatfield* v. *Lasher*, 81 N. Y. 246 ; *Tasker* v. *Wallace*, 6 Daly, 364, 367; *Blake* v. *Griswold*, 103 N. Y. 429, 437.) The question of the assignability of the penalty, and that the same is carried by an assignment of the debt, is no longer an open one here on the principal of *"stare' decisis."* (*Bolen* v. *Crosby*, 49 N. Y. 183 ; *Hoag* v. *Lamont*, 60 id. 96 ; *Pier* v. *George*, 86 id. 613 ; *Stokes* v. *Stickney*, 96 id. 323, 327 ; *Fitzpatrick* v. *Woodruff*, Id. 561, 565 ; *Harris* v. *Jex*, 55 id. 421, 425 ; 14 Am. R. 288 note ; 55 N. Y. 424.)

ANDREWS, J. The death of the original plaintiff has eliminated from the complaint the causes of action founded on the statutory liability of the trustees for a failure to make a report, or for making a false report, imposed by the twelfth and fifteenth sections of the general manufacturing corporations act of 1848. So, also, by the death of some of the original defendants, and the discontinuance of the action against others, the action has become one against Chester Griswold alone on the cause of action stated in the third, or conspiracy count in the complaint. This cause of action was substantially one for fraud and deceit by means of false pretenses, and the right of recovery is governed by the principles applicable to actions of that character. That this is the nature of the action was decided in the case of *Arthur* v. *Griswold* (55 N. Y. 400), which was also an action against the present defendant and others, the complaint in which set forth a cause of action similar to that alleged in the third count of the complaint in this action. The allegation that there was a conspiracy to commit the fraud does not effect the substantial ground of action. The *gravamen* is fraud and damage, and not the conspiracy. The means by which a fraud is accomplished are immaterial except so far as they tend, in connection with the damage suffered, to show an actionable injury. The allegation and proof of a conspiracy in an action of this character is only important to connect a defendant with the transaction and to charge him with the acts and declarations of his co-conspirators,

where otherwise he could not have been implicated. But a mere conspiracy to commit a fraud is never of itself a cause of action, and an allegation of conspiracy may be wholly disregarded and a recovery had, irrespective of such allegation, in case the plaintiff is able otherwise, to show the guilty participation of the defendant.    In other words, the principles which govern an action for fraud and deceit are the same, whether the fraud is alleged to have originated in a conspiracy, or to have been solely committed by a defendant without aid or co-operation. Whenever it becomes necessary to prove a conspiracy in order to connect the defendant with the fraud, no averment of the conspiracy need be made in the pleadings to entitle it to be proved.   These principles are well settled.   The opinion of Chief Justice NELSON in *Hutchins* v. *Hutchins* (7 Hill, 104), contains an elaborate consideration of the subject, and no other authority need be cited.

The question in this case turns upon the point whether the evidence proved or tended to prove a cause of action against the defendant for false and fraudulent representations within the rules governing the common-law action for fraud and deceit. There is no doubt or question as to what elements are requisite to sustain an action for false pretenses.   The essential constituents of such an action have been understood from the time such actions were first maintained.   They are tersely stated by CHURCH, Ch. J., in *Arthur* v. *Griswold* (*supra*), viz. : "Representation, falsity, *scienter*, deception and injury." There must have been a false representation, known to be such, made by the defendant, calculated and intended to influence the plaintiff, and which came to his knowledge, and in reliance upon which he, in good faith, parted with property or incurred the obligation which occasioned the injury of which he complains.   All these circumstances must be found to exist, and the absence of any one of them is fatal to a recovery.   It is not necessary that the false representation should have been made by the defendant personally.   If he authorized and caused it to be made it is the same as though he made it himself.   Nor is it necessary that it should have

been made directly to the plaintiff. If it was made to the public at large for the purpose of influencing the action of any individual who may act upon it, any person so acting upon it and sustaining injury thereby may maintain an action. It is on this ground that promoters or directors of corporations have been held liable for false representations in a prospectus or reports, or other papers issued by the corporation with their sanction, by which individuals have been induced to purchase the stock or become creditors of the corporation, and the fact that the false report or prospectus purports to be the act of the corporation and not of the promoters or directors, does not relieve them from personal responsibility.

In view of the settled principles governing the action for fraud and deceit by means of false pretenses, there is, upon the evidence presented in this case, an insuperable difficulty in maintaining the present judgment. There is no evidence that Bonnell, in purchasing the notes, relied upon any representations made by the defendant. On the contrary, it affirmatively appears that at that time he was wholly ignorant of the alleged fraudulent scheme under which the " Iron Mountains Company " was organized, and had no knowledge or information of any of the acts or representations of the defendant or the other parties to the alleged conspiracy set forth in the complaint. He knew nothing of the property of the company nor of the amount of its capital stock, nor did he know who were the directors or persons interested, and never saw or heard of the report of 1870, or of the prospectus prepared by Remington. The trial judge submitted the question of conspiracy to the jury, and whether the defendant Chester A. Griswold was a party to it and knew of the prospectus, and also, whether he knew, when he signed the report of 1870, that the statement that the capital stock of $2,000,000 had been paid in full, was false and untrue. It is insisted by the defendants' counsel that the evidence was insufficient to authorize a finding against the defendant Chester A. Griswold on these questions. At the time of these transactions he was a young man, twenty-

four years of age, employed by the firm of John A. Griswold & Co., at Troy, and had little, if any, knowledge of mining or mining property, and was made a trustee of the Iron Mountains Company without his knowledge, at the time, and signed the report of January, 1870, at the request of his father, who was largely interested in mining property and in the manufacture and sale of iron. It is claimed that the facts show that the defendant relied wholly upon the statements of his father ,and Remington, and acted under his father's direction in good faith, believing the representations made in the prospectus and in the report of 1870 to be true. We deem it unnecessary to consider this contention. The jury have found adversely to the defendant upon these questions of fact. But this does not relieve the case of the difficulty that, assuming the facts to be as found, the plaintiff's case, as proved, fails on the ground that Bonnell, when he took the notes, did not know of the illegal conspiracy or false representations, and consequently was not influenced thereby in making the purchase.

In order to recover in an action for fraud and deceit the fraud and injury must be connected . The one must bear to the other the relation of cause and effect, not, perhaps, in so close a sequence as in actions on contract. But, nevertheless, it must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause. In the statutory action against the trustees of a manufacturing corporation organized under the act of 1848, for making a false report, the statute dispenses with the necessity of showing any privity or relation between the act done and the debt sought to be recovered. The liability to creditors is made absolute, and exists irrespective of the fact whether they knew of the falsity of the report or relied upon the statements therein. But the statutory action abated by the death of Bonnell, and the plaintiff can now only pursue his common-law remedy and must abide by the conditions which attend it. The court, in the main charge to the jury, without referring to the rule that in an action for fraud or deceit it must appear that the fraud

produced the injury, charged that if the jury found "that there was a conspiracy; that defendant was really a member of it, doing whatever was necessary to do to carry it out, and the object was to get credit for the corporation with the expectation that the debts would not be paid, then he would be liable. If he was not a member of the conspiracy and did not adopt it, then you will render a verdict for the defendant." Subsequently on the request made by the defendant's counsel to charge, "that except the plaintiff relied upon the representations, they did not deceive him or cause him damage," the court replied, "I hold that all he need rely on is that defendant (the company) was duly incorporated and that there was a good company." This was excepted to and the exception was, we think, well taken. It is undoubtedly true that Bonnell took the notes on the assurance of the "Birmingham Iron Foundry," and of Ellis, the treasurer of the "Iron Mountains Company," that the company was good and that the notes would be promptly paid at maturity. But neither was the "Birmingham Iron Foundry" nor Ellis the agent of the defendant, nor were they authorized by him to make any representations to Bonnell, and their statements did not bind him, nor was he responsible for them. Ellis is not charged to have been a co-conspirator, and it does not appear that he had any interest as stockholder or otherwise in the "Iron Mountains Company." That his declarations were inadmissible to charge the defendant is clear from the decision in *Arthur* v. *Griswold* (*supra*), where a similar question was decided. It was not enough to entitle the plaintiff to recover that it appeared that Bonnell took the notes believing that the company was good, or because the company was represented to him to be good, unless the representation was traced to the defendant. The complaint states, among other things, that Bonnell took the notes, "confiding in the general reputation of the company produced by the representations," etc. That a corporation or an individual is reputed to be solvent, although in fact insolvent, by reason of which a person purchases individual or corporate securities, is not alone a ground for maintaining

an action for fraud against the debtor.   Nor is the case, in its legal aspect, strengthened by proof that this reputation was attributable to false appearances put on by the corporation or the individual, or that there was a holding out by them by general representations, or otherwise, that the corporation or individual was solvent and responsible.   The law exacts of every individual reasonable care to protect himself before he is permitted to charge another as the author of an injury.   In case of false pretenses there must be a specific representation shown upon which the plaintiff relied.   General reputation of solvency is quite an insufficient ground of reliance by a person who purchases securities in the market, although that reputation may have sprung from the conduct of the defendant. The case of *Peek* v. *Gurney* (L. R., 6 E. & I. App. 377) applies with great stringency the rule that to sustain an action for fraudulent representations, a close relation must be shown between the representations and the injury claimed, and, also, that the representations must have been made to influence the conduct of the plaintiff, or of a class of persons in which he was included.   That case was much considered, and it was held that false representations contained in a prospectus, issued to induce subscriptions to shares on the organization of a limited company, would not sustain an action in favor of one who was not a party to the original subscription, but who, afterwards, having seen the prospectus, and relying upon it, purchased shares in the market.   The judges were of the opinion that, as the prospectus was intended on its face to influence only original subscribers, it was not available to sustain the plaintiff's action, and that the representation, although the remote cause of the injury, was not so connected with it as to constitute, as to the plaintiff, an actionable fraud.

We think the case was submitted to the jury upon a false theory.

The judgment should, therefore, be reversed, and a new trial granted.

All concur.

Judgment reversed.