THEODORE DE WITT MOORE, Appellant, *v.* BONBRIGHT & CO., INC., and Others, Respondents.

Second Department, July 21, 1922.

**Fraud and deceit — action based on fraud and conspiracy of defendants in depriving plaintiff of benefits of contract with one of defendants — only one cause of action stated — complaint states good cause of action — person interested in joint enterprise not bound to resort to equity to protect his rights and may sue at law for damages.**

Plaintiff alleged that he conceived and originated a plan for the manufacture of automatic machine guns to be constructed for foreign governments during the war; that by reason of his own experience in the manufacture and sale of fire-

arms he was exceptionally qualified to formulate and carry through the enterprise of supplying the guns; that he was aware of the expiration of the patent on the Colt gun which fact was not generally known; that he completed temporary arrangements for the manufacture of his gun and the parts thereof; that he tendered the gun to the British government through its authorized representative in this country, and said representative took it under consideration; that thereafter he entered into a contract with the defendant Export Corporation which was organized by the individual defendants and by the defendant Bonbright & Co., Inc., by which he agreed to secure an order from the authorized representatives of an unnamed government for 5,000 machine guns to sell at approximately $600, and to cost approximately $250, and to procure a contract on behalf of a company to be formed by said Export Corporation for the manufacture of the guns. The complaint alleges also that after the said contract was executed the plaintiff disclosed to the defendants that he intended to use the Colt patent and that he had entered into negotiations with the representatives of Great Britain for the sale of the guns; that as a result of the conspiracy between the defendants and in fraud of plaintiff's rights, the defendant Export Corporation refused to perform its obligations and the defendants entered into a contract with the Colt Company to the exclusion of the plaintiff and then permitted an option agreement already obtained from the Colt Company to expire and represented to the British representative that the guns could not be manufactured without the co-operation of the Colt Company, and that they, the defendants, and not the plaintiff could secure such co-operation; that as a result, the British government refused further to negotiate with the plaintiff in regard to the manufacture of the guns; that the defendants thereafter organized another corporation and secured a contract from the British government for 12,000 machine guns of the same type and kind as those tendered by the plaintiff and at approximately the same price, and that the plaintiff has duly performed all the conditions of the contract, except such as he has been prevented from performing by the defendants.

*Held*, that the complaint states but a single cause of action and that for damages for fraud and conspiracy against all of the defendants.

The allegations in the complaint concerning the relations of the defendants and the charge that the exclusion of the plaintiff from the enterprise was the result of a preconceived, deliberate conspiracy on the part of all of the defendants, are sufficient to hold them all, if the complaint states a cause of action against any of them.

The complaint states a good cause of action. It was not necessary for the plaintiff to allege that but for the defendants' acts he would have been able to perform his covenants and agreements contained in the written agreement, for the inability on the part of the plaintiff to perform is a matter of defense, and furthermore, it was a part of the agreement that the defendants were to co-operate with the plaintiff.

The fraud and unlawful motive and conspiracy is charged against all of the defendants, and the allegation is that the Export Corporation, party to the written contract, is subsidiary to and controlled by the other defendants and was itself a party to the fraud, and even if the acts done by the defendants were not in themselves tortious, the defendants are liable for damages resulting from the alleged fraud and conspiracy.

The defendants owed a duty of confidence and trust to the plaintiff in the transaction under the allegations of the complaint, for while all of the defendants were not jointly interested, the legitimate inferences from the allegations of the complaint are that the defendant Bonbright & Co., Inc., agreed to enter into

the scheme and to furnish all the capital needed, and the other defendants are a part of Bonbright & Co., Inc., or their representatives.

A person interested in a joint enterprise is not required to resort to equity to protect his rights where he does not demand equitable relief, but he may sue at law for damages arising from a breach of the trust which, in this case, was the alleged unlawful exclusion and ejection of the plaintiff from the enterprise accomplished by fraud.

APPEAL by the plaintiff, Theodore De Witt Moore, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on or about the 10th day of April, 1922, granting defendant's motion for judgment on the pleadings, consisting of the amended complaint and the demurrers thereto, and also from the judgment entered in said clerk's office on the 14th day of April, 1922, upon said order dismissing the amended complaint upon the merits.

*George E. Morgan* [*Henry H. Man* with him on the brief], for the appellant.

*Henry L. Stimson* [*Allen T. Klots* and *Fred B. Lund, Jr.*, with him on the brief], for the respondents.

KELLY, J.:

The action was commenced February 28, 1921, and the defendants demurred to the amended complaint on January 25, 1922, upon the grounds: (1) That it did not state facts sufficient to constitute a cause of action; (2) that causes of action were improperly united.

The order granting the defendants' motion for judgment upon the pleadings is dated April 10, 1922. It does not recite the grounds upon which demurrer is sustained nor are we favored by any opinion or memorandum by the learned justice at Special Term. As the order and judgment dismiss the complaint upon the merits without leave to amend, I assume that the court was of opinion that the complaint did not state a cause of action, and this is the argument of the respondents on this appeal.

Upon a motion for judgment upon the pleadings upon the ground that the complaint does not state facts sufficient to constitute a cause of action we are not called upon to decide whether the plaintiff will ultimately succeed on the trial. We are to take the plaintiff's story of his grievance as alleged in the complaint, and taking the facts pleaded as admitted and resolving every legitimate inference in favor of the pleading we are to ascertain whether he states a cause calling for an answer by the defendants.

The action is based upon an agreement annexed to the complaint, dated October 26, 1915, between plaintiff and the defendant Factory Products Export Corporation, a New York corporation, by which plaintiff agrees to secure from an unnamed foreign government or

its authorized representatives an order running to plaintiff or such person or company as the Export Corporation shall name, for 5,000 automatic machine guns of a model which plaintiff has the right to make and sell, the contract price per gun to be approximately $600 and the cost of manufacture, not including amortization charge on cost of plant, not to exceed approximately $250. Specifications are to be such as can be readily complied with; deliveries are not to be required under seven months from the acceptance of the order and are to extend over at least twelve months thereafter, the contract to call for American inspection and full payment at or before acceptance and shipment. Plaintiff agrees to vest in a company to be organized in such manner as the counsel for the Export Corporation may advise, all rights under such contract and all patent rights necessary for carrying out the same, and he also agrees to turn over to said company from time time all other acceptable contracts for automatic machine guns or other munitions which he may secure or to the benefits of which he may be entitled. Plaintiff agrees to procure on behalf of the new company a contract with the Taft-Peirce Manufacturing Company of Woonsocket, R. I., for the manufacture of parts of the automatic machine guns on terms which will keep the total manufacturing costs within the limits mentioned and which shall be in other respects acceptable to the Export Corporation.

Upon compliance with these conditions to the reasonable satisfaction of the Export Corporation, and provided it shall be satisfied as to the facilities, organization and personnel for the manufacture of said guns, the Export Corporation agrees that it will forthwith organize at its own expense the American Arms and Ammunition Company or a corporation of similar name, with a capital stock of $1,000,000 preferred and $2,000,000 common stock, with a board of directors and executive committee to be selected by the Export Corporation. The plaintiff is to be vice-president and general manager of the arms company, which agrees to employ him in that capacity for the first year of the company's existence, at an annual salary of $18,000, beginning on the organization of the company and payable monthly, and for such longer period and at such salary as the parties may agree upon, and plaintiff agrees to serve the company and to give his undivided time and attention to securing of contracts and in general to carrying on and developing the business of the arms company under the direction of the board. He is to associate himself with such experts as he may select, subject to approval by the company which agrees to pay them. The defendant Export Company agrees to underwrite the sale of the preferred stock, 10,000 shares, and of 10,000 shares of

the common stock for $1,000,000, on such terms as will provide the arms company with funds as they may be required, the proceeds of the sale of such stock to be paid to the arms company to be used for the corporate purposes of said company. The remaining common stock, 10,000 shares, to be issued as full-paid and non-assessable, will be divided 4,000 shares to plaintiff and 6,000 shares to defendant Export Corporation.

This agreement is signed by the plaintiff and by the defendant Export Corporation, by defendant Louis E. Stoddard as president.

The complaint alleges that the defendant Export Corporation and the defendant Bonbright & Co., Inc., were closely affiliated, and that the acts of the Export Corporation were controlled by the Bonbright Company, that the directorates of the two corporations were interlocking, the same men holding office in both corporations. It is alleged that the Export Corporation was organized for the purpose of and was at the time mentioned engaged in handling the export and commission business of the Bonbright Company. It is alleged that defendants Stoddard and Woolsey were directors and officers of the Export Corporation, and defendants Bonbright — William P. and Irving —, Walcott, Willcox and Walbridge were directors of the Bonbright Company.

The plaintiff then alleges that during the autumn of 1915 Great Britain in alliance with other nations was at war with Germany and its allies, and was endeavoring to obtain in this country large quantities of ammunitions including automatic machine guns. It is alleged that Great Britain was represented in this country by General Pease as its agent, and that J. P. Morgan & Co. of New York city was also acting for the British government and its allies in the purchase of munitions. The sources of supply of machine guns were inadequate and the demands of the British government and its allies were greater than could be supplied from the factories then conducted and in operation.

The plaintiff alleges that at this time he had been engaged for more than twenty-five years in the business of manufacturing and selling firearms, that he had expert knowledge and by reason of his experience he was peculiarly and exceptionally qualified to formulate and carry through to completion a plan to supply the automatic machine guns needed by the British government, at a great profit to himself and to those who might join him in such enterprise. He alleges that he formed a plan for manufacturing and selling machine guns of a type known as the Colt type to the British government, and carried such plan so far towards completion as to be ready with the help of skilled assistants, for whose services he had arranged, to make arrangements to manufacture

Colt type machine guns provided he could procure the funds necessary to pay the cost of manufacture. He alleges that the Colt type of gun had up to that time been manufactured by the Colt Firearms Company, but in small quantities, and that the Colt Company had not facilities for extensive manufacture sufficient to meet the existing demand. He alleges that the Colt type guns had been theretofore manufactured under a patent which had recently expired and that plaintiff knew of the expiration of the patent. He alleges that the fact of the expiration of the Colt patent was not generally known, and was not known at all to any of the defendants.

With this knowledge of the urgent needs of the British government and its allies, and having, by reason of his twenty-five years' experience and, as he alleges, his peculiar and exceptional qualifications and his information concerning the expiration of the Colt patent, formulated a plan for supplying the guns to Great Britain, the plaintiff alleges that prior to October 18, 1915, he called upon Morgan & Co., the agents for that government, and outlined his plan to one of the members of the firm who requested him to put it in writing for consideration by Morgan & Co. and General Pease, which plaintiff accordingly did.

Plaintiff alleges that as part of his proposed plan he had determined on the factory of the Taft-Peirce Manufacturing Company as the place for manufacturing the guns, and that "having arranged for manufacturing facilities and found the market for said gun," on October 18, 1915, he interviewed the defendant Bonbright Company through certain of its officers for the purpose of securing capital for carrying out the plan conceived by him for manufacturing and selling automatic machine guns to the British government. He alleges that he met defendants Stoddard and Woolsey, officers of the Export Corporation, and Walcott and Irving Bonbright, directors of the Bonbright Company, which corporations he alleges were closely affiliated, the Bonbright Company controlling the acts of the Export Corporation. He alleges that he stated his enterprise to these gentlemen on October 18, 1915, acquainting them generally with what he had done, giving them his various estimates of cost of manufacture and resulting profits, but without disclosing at that time his intention to avail himself of the right to manufacture guns of the pattern covered by the Colt patent which had then expired. On October 19, 1915, he was informed "by the defendants" that the Bonbright Company would "embark in the enterprise suggested to it by the plaintiff as aforesaid and would furnish all the capital needed for the carrying out of plaintiff's plans, but that it would be done

in the name of the subsidiary company which it controlled, known as the Factory Products Export Corporation, one of the defendants herein."

Plaintiff alleges that the written contract of October 26, 1915, a copy of which is annexed to the complaint and the contents of which have been already set forth, was executed in accordance with this agreement by the Bonbright Company to embark on the enterprise and to furnish all the capital required.

The plaintiff then alleges that he has duly performed all the conditions and covenants of the written contract of October 26, 1915, except such as he has been prevented from performing by the defendants as set forth in the complaint.

He alleges that after the execution of the written contract he informed the defendants of the expiration of the Colt patent and of his plan to manufacture that type of gun. He alleges that defendants represented to him that they were in close touch with the Colt Manufacturing Company and that it would be of great advantage to the enterprise to have the co-operation of the Colt Company in the manufacture of the guns, which co-operation they undertook to procure, and plaintiff alleges that such co-operation would be advantageous and that he trusted the defendants and left the negotiations with the Colt Company to them; that thereafter the defendants secured an agreement by the Colt Company to co-operate in the enterprise, in the form of an option expiring at an early date.

The complaint then alleges:

" 16th. That the defendants having obtained from the plaintiff the information necessary to enable them to proceed in disregard of his rights for the purpose and with the intent of obtaining for themselves and taking from the plaintiff the benefits of his expert knowledge so disclosed to them as aforesaid, and depriving him of the fruits of said contract and the fruits of his labors and endeavors and of any benefit to be derived by him from his plan, and with the intention of securing for themselves all benefits that may be derived from said contract and from said plan of plaintiff, fraudulently and wrongfully and in disregard of the rights of this plaintiff did conspire to deprive plaintiff of the benefits and profits of his plan and of the contract Exhibit 'A' and in pursuance of said conspiracy did proceed to act and did so act that the defendant, the Factory Products Export Corporation, whose actions the other defendants controlled, violated, disregarded, failed, neglected and refused to perform its obligations under the contract to the great loss and damage of this plaintiff.

" 17th. That the defendants having obtained from the plaintiff

the information as aforesaid, did, in violation of their duty to this plaintiff, wrongfully and unlawfully so act as to deprive this plaintiff of the benefit of his contract made with the Factory Products Export Corporation as aforesaid, and did in fact render said contract worthless and of no value."

Plaintiff alleges that after the signing of the written contract and in pursuance of his obligations thereunder he continued his efforts to obtain the contract from the British government and that he made a tender to furnish said guns to Morgan & Co., which was submitted by them to the representative of the British government; that the sole market and only available purchaser for machine guns in large quantities was under the control of Morgan & Co., and the representative of the British government.

He alleges that in furtherance of the conspiracy to render value-less plaintiff's contract and to secure to themselves the benefits derived from plaintiff's plan, and with knowledge of all that he had done to secure the order from Great Britain and knowing that unless he could procure that order he would be unable to perform his contract, the defendants permitted the option agreement already obtained from the Colt Company to expire, but first made a new agreement with the Colt Company by which that company agreed to co-operate with defendants to the exclusion of plaintiff; that defendants then permitted the option agreement to expire without giving plaintiff an opportunity to comply therewith, but that they informed him that said option agreement had been extended. He alleges that defendants, having ascertained from him that he had in pursuance of his contract made a tender of manufacture of the guns to the British government through Morgan & Co., represented to General Pease that the guns could not be manufactured without the co-operation of the Colt Company and that they, defendants, and not the plaintiff, could secure such co-operation and that in consequence of the representations so made by defendants (and it will be remembered that all of these wrongful acts are alleged to be the result of a conspiracy between defendants and in fraud of plaintiff's rights), General Pease refused to further negotiate with the plaintiff in regard to any matter connected with the manufacture and sale of the guns, and plaintiff alleges that at defendants' suggestion General Pease thereafter dealt with the defendants in the matter of the tender of the guns theretofore made by plaintiff.

Plaintiff alleges that the defendants allowed the original option secured from the Colt Company to expire in furtherance of the conspiracy and fraudulent design set out in the complaint and alleges that they could have complied with its terms or procured

an extension thereof if they so desired. He alleges that defendants having allowed the original option to expire but with the understanding had with the Colt Company that it would continue co-operation with defendants as already pleaded, the defendants thereafter, on December 7, 1915, organized the Marlin Arms Corporation; that the defendant Stoddard, president of defendant Export Corporation, was one of the incorporators of the Marlin Corporation and that the officers and directors and stockholders, some or all, of the defendants Bonbright Company and Export Corporation were largely interested in the Marlin Corporation and that defendants Stoddard and Walbridge were directors thereof; that the Marlin Corporation was incorporated for the purpose of manufacturing the automatic machine guns which plaintiff had confidentially brought to the attention of defendants relying upon their good faith to carry out the written contract, and he alleges that the Marlin Corporation proceeded to manufacture the said gun with the exclusive co-operation of the Colt Company.

Plaintiff alleges that defendants, having thus fraudulently and in pursuance of conspiracy interfered with him and prevented the performance of the written contract, on November 10, 1915, notified him that he was in default in the performance of said written contract, although plaintiff was then actively engaged in performance of said contract, as defendants knew.

Having thus excluded him from participation in the enterprise which he alleges was conceived by him and in which defendants through their representative, the Export Corporation, engaged him under agreement to share the profits with him, the plaintiff alleges that defendants secured an order from the British government to the Marlin Company for 12,000 of the machine guns of the same type and kind as those tendered by the plaintiff, and also for extra parts of large price, but the Export Corporation refused to carry out or perform the duties and obligations imposed upon it under the terms and conditions of the written contract of October 26, 1915.

The complaint alleges that defendants, having so excluded the plaintiff by means of fraud and conspiracy from participation in the enterprise conceived and planned by him, in violation of their agreement and of the contract signed by the subsidiary Export Corporation, sold through their Marlin Company to the British government 12,000 machine guns of the Colt type and extra parts, which was the full supply necessary. He alleges that they received more than $650 a gun and that the profit on each gun was approximately $400 besides the profit upon the extra parts.

19

I cannot agree with the conclusions of the learned Special Term. We have not the advantage of an opinion or formal decision on the demurrer. So far as the second ground of attack upon the complaint is concerned, I think but one cause of action is alleged and that is for damages for fraud and conspiracy against all of the defendants. The allegations in the complaint concerning the relation of defendants and the charge that the exclusion of the plaintiff from the enterprise was the result of a preconceived deliberate conspiracy on the part of all of the defendants, are, it seems to me, sufficient to hold them all if the complaint states a cause of action against any of them. And the respondents do not argue this objection in the brief.

The defendants contend: *First*, that plaintiff fails to allege that but for defendants' acts he would have been able to perform his covenants and agreements contained in the written agreement. They assert that if he was unable to perform, the alleged wrongdoing of the defendants did not occasion any legal damage. *Second*, defendants claim that, even if we assume that defendants' acts damaged plaintiff, still they were not tortious acts. *Third*, defendants say that upon the facts as pleaded the defendants owed no duty of confidence or trust to the plaintiff. *Fourth*, defendants insist that if plaintiff's complaint is based upon breach of a fiduciary relation in the nature of a joint adventure, his remedy is in a court of equity and he cannot maintain an action at law for damages.

As to the first objection, that plaintiff must allege that but for the wrongful acts of defendants he would have been able to perform his covenants and agreements contained in the written contract. The plaintiff alleges that he duly performed all the covenants and conditions of the contract on his part to be performed except such as he was prevented from performing by the defendants.

I think inability on the part of the plaintiff to perform is a matter of defense. Plaintiff alleges that conceiving and originating the plan he proceeded with it and did his part until he was excluded from the enterprise by the deliberate, intentional, fraudulent acts of defendants, the result of a conspiracy. He alleges that by reason of his twenty-five years' experience in the manufacture and sale of automatic and other firearms he was peculiarly and exceptionally qualified to formulate and carry through the enterprise of supplying the British government with the automatic machine gun which it needed. He alleges that he knew that by reason of expiration of the Colt patent the manufacture of that particular gun which would answer the requirements was open to manufacturers generally who were not limited as to quantity, as were the original patentees. He conceived the plan, he presented it to the representatives of

the British government, who took it under consideration. That it was practicable appears from the allegation that this identical gun was manufactured and purchased by the British government. That it was a profitable enterprise for the manufacturer cannot be doubted on the allegation that defendants secured $4,800,000 or more in profits. Plaintiff disclosed his plan to the defendants, he gave to them his estimate of the cost of manufacture and of the price to be obtained for the guns. The defendants accepted his figures, they embarked with him in the enterprise and agreed to furnish all the capital needed to carry out his plans. What was there for plaintiff to do under the contract? He agreed with the Export Corporation to secure the contract from a foreign government for 5,000 guns at an approximate price of $600 per gun and at a cost of manufacture of approximately $250 per gun. The contract was secured by the Marlin Company, but under the allegations in the complaint the Export Corporation was the defendants, and the Marlin Company was the defendants masquerading under another name. It was for 12,000 guns instead of 5,000, the profit reaped was $400 per gun instead of the $350 promised in the contract. The defendants who are alleged to have fraudulently excluded the plaintiff from the enterprise cannot be heard to say that plaintiff was bound to allege that he could have brought the result about irrespective of their co-operation. That was not the agreement. The charge is that he called their attention to the enterprise previously unknown to them, that they entered into a contract with him, availed themselves of his plans and experience and his individual initial offer to Morgan & Co. and General Pease, and then threw him overboard and went on without him. It seems to me that under the allegations in the complaint he did all that he had contracted to do. He alleges that he was actively engaged in the performance of the contract on November 10, 1915, when the defendants notified him that he was in default. Plaintiff's additional agreements under the contract of October 26, 1915, were to procure a contract with the Taft-Peirce Company of Woonsocket, R. I., to manufacture parts of the guns and that he would serve the company as vice-president and general manager. The complaint alleges that the defendants in pursuance of the alleged conspiracy gave the contract to manufacture to the Marlin Company, which was in fact the defendants' organization. I cannot agree that the complaint is defective because plaintiff has not alleged his individual ability to perform the entire contract. That was not his agreement.

The second criticism on the complaint is that, assuming defendants' acts caused damage to plaintiff, they were not tortious acts.

Defendants contend in their points that plaintiff does not charge that defendants induced his co-contractor, the Export Corporation, wrongfully to break the agreement. But under the allegations in the complaint the Export Corporation was the defendants. The Export Corporation was simply a name by which defendants transacted the business. It is charged that the Bonbright Company and the individual defendants controlled the Export Corporation, that the directorates were interlocking and that the individual defendants and the two corporations were closely affiliated, acting one for the other. The *gravamen* of the action is fraud on the part of all of the defendants including the Export Corporation; and as said by Mr. Justice BREWER in *Angle* v. *Chicago, St. Paul, etc., Railway* (151 U. S. 1), cited in respondents' points: " That there were both wrong and loss is beyond doubt. And, as said by CROKE, J., in *Baily* v. *Merrell*, 3 Bulst. 94, 95, ' damage without fraud gives no cause of action; but where these two do concur and meet together, there an action lieth.' " And in *Rice* v. *Manley* (66 N. Y. 82, 84), also cited by respondents, the court says: " Fraud and falsehood are *mala in se*, and wrongful in the eye of the law, so that if damage results therefrom there is the damage and wrong necessary to create a cause of action." This is not a case where defendants are charged with inducing a party to a contract to break his contract. Even in such a case if it is alleged that defendant maliciously induced the breaking of the contract to the damage of plaintiff the complaint is good. (*Lamb* v. *Cheney & Son*, 227 N. Y. 418.) Here the fraud and unlawful motive and conspiracy is charged against all of the defendants and the allegation is that the Export Corporation, party to the written contract, is subsidiary to and controlled by the other defendants and was itself a party to the fraud.

Defendants' third criticism of the complaint is in substance that it states no facts from which a duty or obligation was imposed upon all of the defendants toward the plaintiff. Defendants say that no contract is pleaded by which all of the defendants were partners with the plaintiff in a joint enterprise; that there is no allegation of a relation of trust between defendants and plaintiff. I cannot agree with this interpretation of the pleading. These defendants by their demurrer admit all the material, relevant facts charged in the complaint and the legitimate inferences therefrom. The charge is that the Bonbright Company agreed to " embark in the enterprise " and that they agreed to furnish all the capital needed, and by other appropriate allegations it is charged that all of the other defendants are part and parcel of the Bonbright Company or that they are representatives of the Bonbright Company and

controlled by that corporation, and that the alleged wrongful acts were part of a conspiracy and a fraud in which all of the defendants took part. I think the relations between plaintiff and the defendants as alleged and admitted by the demurrer entitled plaintiff to place trust in the Bonbright Company and their subsidiaries and agents and called for fair dealing on their part towards the plaintiff.

The fourth objection urged by defendants, respondents, is that plaintiff's remedy is in a court of equity and not in a court of law. This objection if well founded would not warrant the dismissal of the complaint. " There is only one form of civil action. The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished." (Code Civ. Proc. § 3339; Civil Practice Act, § 8.) But I do not understand that a litigant interested in a joint enterprise or asserting damage by reason of a breach of trust is barred from a court of law. The plaintiff is not asking for equitable relief by accounting or injunctive relief. He is suing for damages for his alleged unlawful exclusion and ejection from the enterprise accomplished by fraud. He says that not only the Export Corporation but all of the defendants were associated together in the unlawful acts complained of. His complaint is that he had a contract which was a valuable asset, and that the defendants have deprived him of his property. (*Lamb v. Cheney & Son, supra.*) " The *gravamen* is fraud and damage, and not the conspiracy. * * * The allegation and proof of a conspiracy in an action of this character is only important to connect a defendant with the transaction and to charge him with the acts and declarations of his co-conspirators, where otherwise he could not have been implicated." (*Brackett* v. *Griswold*, 112 N. Y. 454. See, also, *Green* v. *Davies*, 182 id. 499; *De Ronde* v. *Bell*, 116 App. Div. 191.)

I think the complaint is good against the demurrer of the defendants.

The judgment should be reversed upon the law, with costs. The order granting defendants' motion for judgment upon the pleadings should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs, with leave to defendants to answer within twenty days upon payment of costs.

BLACKMAR, P. J., JAYCOX, KELBY and YOUNG, JJ., concur.

Judgment reversed on the law, with costs. Order granting defendants' motion for judgment upon the pleadings reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to defendants to answer within twenty days upon payment of costs.