## MING & Another *v.* WOOLFOLK.

ERROR TO THE SUPREME COURT OF THE TERRITORY .OF MONTANA.

Submitted January 15, 1886.—Decided February 1, 1886.

In order to maintain an action for deceit, it is not only necessary to establish the telling of an untruth, knowing it to be such, with intent to induce the person to whom it is told to alter his condition, but also that he did alter his condition in consequence, and suffered damage thereby : and if it appear affirmatively that although he altered his condition after hearing the untruth, he was not induced to do it in consequence thereof, but did it independently, the action fails.

On the facts proved in this case the plaintiff has no cause of action founded on contract.

The facts are stated in the opinion of the court.

*Mr. M. F. Morris* and *Mr. L. M. Saunders* for plaintiffs in error.

*Mr. Woolfolk,* defendant in error, for himself.

MR. JUSTICE WOODS delivered the opinion of the court.

The plaintiffs in error were the plaintiffs in the court below. They brought this suit against the defendant in error in the District Court for the County of Lewis and Clarke, in Montána Territory, and in their petition stated their case substantially as follows :

On September 16, 1874, the defendant made and delivered to the plaintiffs his contract in writing, of which the following is a copy :

"HELENA, *September* 16, 1874.

"Whereas John Kinna and John H. Ming have this day joined with me in borrowing the sum of $2572.10 twenty-five hundred and seventy-two and $\frac{10}{100}$ dollars, for the purpose of paying R. S. Hale the balance of eight thousand dollars due him under private agreement with said Ming, Kinna, and Woolfolk, in order for their release from certain notes executed by them to said Hale, as security for the Park Ditch Company ;

and whereas the Park Ditch Company has pledged the note of William Chessman to it, and its claim against Felix Poznainsky, and any other demands due it to the extent of repaying to the said Ming, Kinna, and Woolfolk the sum of $2572.10, this day borrowed; now, therefore, the said Woolfolk does hereby agree that if he shall collect any of the above amounts, or shall from any resources whatever of the Park Ditch Company receive any other sums, after deducting all costs, charges, and expenses, to apply the same in payment of said note, and also another note executed to R. S. Hale for taxes, amounting to between six and seven hundred dollars, until said notes shall be fully paid, said payments to be made by the said Woolfolk after his return from the East next spring and as soon thereafter as the amounts shall be received; but the said Woolfolk does not assume to pay said note only to the extent that he shall receive such amounts from the resources of the Park Ditch Company as aforesaid.

"A. M. WOOLFOLK."

The petition further averred that Woolfolk, in order to induce the plaintiffs to join him in borrowing the money and executing the note therefor, so as to accomplish the release of all three from their liability to Hale, represented to them that the Park Ditch Company had passed a resolution, in conformity with the recitals in the contract above set forth, by which it had pledged the Chessman note and the claim against Poznainsky, and all of its resources, including all of its receipts for water sold and to be sold by it, sufficient to pay the said sum of $2572.10, and that, relying on this representation, they joined in the borrowing of said money and the execution of the note therefor; that the Park Ditch Company had never passed such resolution; that the plaintiffs had each paid out of his own funds the one-third of said note for borrowed money, and they had also paid the sum of $445.50, being the two-thirds of the note mentioned in the contract which Hale had given for taxes; that no part of said sums of money had been repaid to the plaintiffs, and the same were due to them, with interest.

The petition further alleged that about May 1, 1875, the de-

fendant took the control and management of the affairs of the Park Ditch Company, and between that date and September 1st following received on the Chessman note and the claim against Poznainsky about $3000, and from sales of water and other resources of the Park Ditch Company more than $3500, and he should have applied a sufficient part of these sums to the reimbursement of the plaintiffs for the moneys paid out by them as aforesaid, amounting in all to the sum of $2255.64, but that he had refused so to do. The plaintiffs, therefore, prayed judgment against the defendant for the last mentioned sum, with interest.

The defendant, in his answer, admitted the making of the contract set out in the declaration, but denied that there was any valuable consideration therefor; denied that he had stated to the plaintiffs that the Park Ditch Company had passed the resolution mentioned in the petition; denied that on May 1, 1875, or at any other time during that year, he took possession of the Park Ditch or the control or management of the Park Ditch Company; denied that he ever collected any sum whatever on the Chessman note or the Poznainsky claim, or ever received at any time after the execution of said contract, from sales of water or any other resources of the Park Ditch Company, the sum of $3500, or any other sum, after deducting costs, charges, and expenses. Upon the issues thus raised the case was tried.

After the plaintiffs had introduced their evidence and rested, the defendant moved the court for non-suit. The court granted the motion, and rendered judgment for the defendant for costs. The plaintiffs thereupon took the case by appeal to the Supreme Court of the Territory of Montana, which affirmed the judgment of the District Court. By the present writ of error the plaintiffs seek the reversal of the judgment of the Supreme Court of Montana.

It appears from the record that the Park Ditch Company was a corporation organized under the laws of the Territory of Montana; that on September 16, 1874, the date of the contract set out in the petition, it was insolvent, and that the plaintiffs and the defendant were jointly liable as its sureties to one R. S.

Hale for a balance of between $11,000 and $12,000, for which they held no indemnity, and that Hale, the creditor, offered to release them from this liability on the payment to him of the sum of $2572.10, to pay which they borrowed the said money and gave the note mentioned in the petition. Both the plaintiffs were examined as witnesses. Ming testified that the water rents which had been pledged, as he supposed, for the indemnity of the plaintiffs, were the rents for the season of 1875, and that the water did not begin to run until about the middle of May, and that in May, 1875, there was a contest between R. S. Hale and the Park Ditch Company over these receipts, and that Hale brought an action to recover them, and asked for the appointment of a receiver. Both Ming and Kinna testified that they would have paid said sum of $2572.10 to Hale to be released from the larger obligation, even if no representations had been made to them by the defendant, to the effect that the Park Ditch Company had passed a resolution pledging its assets for their indemnity; that they were not induced by the said representations of the defendant to relinquish any security which they held—in fact they held none of any value. In short, to put the case as the plaintiffs themselves by their own testimony put it, they together with the defendant jointly borrowed $2572.10, which they paid to Hale, who in consideration thereof released them from a liability to him as sureties of the insolvent Park Ditch Company of about $12,000, and they would have paid the money whether the Park Ditch Company had pledged its assets for their indemnity or not, and the borrowing of the money subjected them to no loss, but was greatly to their advantage.

So far, therefore, as the case made by the declaration is to be considered as an action to recover damages by a deceit practised by the defendant, it amounts to this, that the defendant, by his false representations, induced the plaintiffs to do something which they would have done anyhow, and by which they sustained no loss, but on the contrary were greatly advantaged. "The requisites to sustain an action for deceit," says Baron Parke, in *Watson* v. *Poulson*, 15 Jurist, 1111, are "the telling of an untruth, knowing it to be an untruth, with intent

to induce a man to alter his condition, and his altering his condition in consequence, whereby he sustains damage." See also *Pasley* v. *Freeman*, 3 T. R. 51; *Polhill* v. *Walter*, 3 B. & Ad. 114; *Levy* v. *Langridge*, 4 M. & W. 337; *Brown* v. *Castles*, 11 Cush. 348; *Tryon* v. *Whitmarsh*, 1 Met. (Mass.) 1. Considered, therefore, as an action for a deceit it is plain that the case must fail; for, conceding the alleged representation to have been made by the defendant and to have been false, the plaintiffs were not induced thereby to change their condition, and, moreover, have suffered no damage.

The plaintiffs' counsel say, however, that the action is to be considered as based on the contract by which the defendant agreed to apply the assets of the Park Ditch Company which came to his hands, after deducting all costs, charges, and expenses, to the reimbursement of the plaintiffs for the money borrowed by them and paid to Hale. Considered as an action on the contract, the suit must fail for want of evidence to support it. It is averred in the petition, and not denied in the answer, that the Park Ditch Company never pledged the assets and resources mentioned in the contract for the reimbursement of the plaintiffs, and nothing in the record shows that such pledge was made. The defendant in his answer denied that, after the making of the contract, he ever received any money from the assets of the Park Ditch Company, or for water rents.

It is clearly shown by the evidence, and the contrary is not now asserted by the plaintiffs, that no money whatever was paid to the defendant on the Chessman note or on the Poznainsky claim. The plaintiffs insist, however, that the defendant received the water rents of the Park Ditch Company in the year 1875 to the amount of about $3500 over and above costs, charges, and expenses. But upon a careful reading of the record we are unable to find any evidence to support this contention. The only testimony upon this point is the minutes of the meetings of the board of trustees of the Park Ditch Company offered in evidence by the plaintiffs. These minutes show that R. S. Hale had, in a suit brought by him against the Park Ditch Company, seized the net receipts for water sales of the company, and that on May 24, 1875, the board of trustees as-

signed said net proceeds to A. J. Davis, W. C. Gillette, and Samuel Schwab, who had become the sureties of the company in the suit, to secure them against loss by reason of their surety-ship. They further show that on October 20, 1875, a resolution was adopted by the board of trustees, by which, after reciting that, whereas R. S. Hale had proposed to dismiss his said action against the company for the proceeds of water sales for the year A. D. 1875, amounting to the sum of $3450, on the following conditions, viz: that A. M. Woolfolk should cause to be dismissed all proceedings involving the payment of certain water notes executed by the Park Ditch Company and held by him, amounting to the sum of about $8000, and should deliver said notes to Hale to be cancelled, and that Woolfolk should cause to be dismissed by T. P. Newton all appeals involving the right to the possession of the Park Ditch, and arbitrate the value of the Tucker Extension belonging to Woolfolk, and that Woolfolk should sell said extension to Hale at such appraised value, and sell and dispose of all other property belonging to Woolfolk and connected with said ditch ; and whereas Woolfolk had at his own expense defended the right of the company to said receipts, and had furnished all necessary bonds for the company, and besides giving his own professional services, had employed and paid counsel to defend said suit; it was resolved that the company did thereby promise and agree with Woolfolk that if he would accede to the terms of Hale, the company would for this and the considerations aforesaid relinquish to him one-half the amount of said receipts, to wit, $1725, provided Woolfolk should accept the same as full reimbursement and satisfaction for all his charges against said company by reason of the premises aforesaid. The minutes further stated that " Woolfolk being present accepted."

This was the only evidence offered by the plaintiffs tending to show any receipt by the defendant of the water rents of the Park Ditch Company for 1875. If the proposition contained in the resolution was carried out, of which there is no evidence in the record, it can hardly be contended that Woolfolk might not receive and appropriate to his own use the $1725 mentioned

in the resolution without violating his contract with the plaintiffs. After the water rents for 1875 had been attached in the suit brought by Hale and had been pledged by the Park Ditch Company to its sureties in that suit, and Woolfolk, to aid the company in compromising the case, had released a claim of $8000 against it, and all claims for professional services rendered in the suit by himself and other counsel whom he had employed, and all claim for the moneys expended by him in the defence of the suit, and had consented to the other exactions imposed by Hale, it can hardly be said that the $1725, the gross sum received by Woolfolk, if in fact he ever received it, was the net proceeds of the water rents, "after deducting all costs, charges, and expenses." It does not appear by the evidence that there were any net proceeds of the water rents: on the contrary it appears there were not.

It needs no argument to show that the contract sued on was not meant to bind the defendant to pay over to the plaintiffs money obtained under the circumstances set out in the resolutions of the board of trustees. There is no other evidence to show the receipt of money by the defendant from the assets or resources of the Park Ditch Company. The case of the plaintiffs must, therefore, fail for want of any evidence to show a breach of the contract made by the defendant with them. Their suit is without support. The record fails to show any plausible ground for bringing it in the first instance or for suing out the present writ of error.

*Judgment affirmed.*