# MARSHALL v. HUBBARD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

Argued January 11, 1886.—Decided March 22, 1886.

In order to recover for injuries caused by false representations, through which plaintiff was induced to perform an act and was injured thereby, it is necessary to establish the making of the false representations by defendant; that he knew them to be false and uttered them with intent to deceive

plaintiff and to induce him to act upon them; and that plaintiff relied upon them and acted, and suffered injury thereby.

When, after giving a party the benefit of every inference that can fairly be drawn from all the evidence, it is insufficient to authorize a verdict in his favor, it is proper for the court to give the jury a peremptory instruction for the other party.

Defendant in error, as plaintiff, commenced this suit in a State court of Wisconsin to recover of plaintiff in error on two promissory notes made by him and payable to defendant in error. The defence pleaded was failure of consideration. The State court admitted evidence to show the failure, and the Supreme Court of Wisconsin, after verdict and judgment, reversed the latter for misdirection in this respect, 50 Wisc. 322, and remanded the cause for a new trial. Plaintiff below then petitioned for removal of the cause to the Circuit Court of the United States on the ground of prejudice and local influence, averring that when the action was commenced he was, and still was, a citizen of Texas. The cause being removed the defendant below filed in the Circuit Court an amended answer also setting up false and fraudulent representations of plaintiff respecting the property, for the purchase of which the notes were given, known to him to be such, made by him with intent to induce defendant to purchase the property and to make the notes; that solely induced thereby defendant did make and give the notes; and that he suffered damage thereby as set forth in the answer. A jury was called, and after all the evidence on both sides was in, the court, among other things, instructed the jury as follows:

"Now, there are certain elements of fact that must be shown to have existed to entitle a party to succeed in such a defence. In the first place, it must be shown that the representations were made; in the second place, that the representations, if made, were fraudulent; in the third place, that the defendant relied upon the representations; and in the fourth place, that he had a right to rely upon them. Those are four material elements of fact that must enter into the case.

"It has been argued that the proof here is totally inadequate to show that the representations, if any were made, were fraud-

ulent, and I must say there is one item of testimony which came from the defendant himself which tends pretty strongly to show that there was not fraud in the transaction. That was the statement that while the plaintiff did represent to him that there were three million feet of merchantable pine on the land, he said, also, that if it should prove not to be so, he would make good the deficiency. If that statement was made by the plaintiff at the time, as thus testified to by the defendant himself, it would seem to be a strong circumstance tending to take out of the representations their alleged fraudulent character. However, the court would strongly hesitate, in view of all the proof that is in upon this question of fraud, before it would take that question, or either of the four questions of fact that I have stated, from the jury. But there are certain other elements of fact which necessarily enter into this defence. Not only must the representations be made, not only must they be fraudulent, and not only must it appear that the party relied, and had a right to rely, upon them, but it must also be shown that the representations were material to the contract or transaction which took place between the parties; and, further, that injury has been sustained, damage has resulted to the defendant from the alleged fraudulent representations. These are as essential as any of the other elements of fact which must be shown in establishing such a defence. I repeat, that it must appear that the defendant has sustained damages which are chargeable to the alleged fraudulent representations, and for which, therefore, the plaintiff is legally responsible; and it is an important question in this case, and not one free from difficulty, since the case is somewhat peculiar.

" I think, therefore, that upon the proofs the case is within the rule laid down by the Supreme Court of the United States, namely, the court can now see, upon the evidence that bears upon the question of materiality of the representations, and alleged injury to the defendant, that if the jury were to render a verdict against the plaintiff it would have to set that verdict aside. If that be so, the court ought not to hesitate in directing a verdict. This being the view which I take of the case, I must hold that the defence which is interposed here is not,

under the proofs, maintainable, and hence that the plaintiff is entitled to a verdict for the amount of his claim, namely, the principal of the notes and the interest on the same."

*Mr. T. R. Hudd* for plaintiff in error.

*Mr. J. D. Markham* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

We concur with the Circuit Court in holding that the alleged false representations of Hubbard to Marshall in reference to the quantity of pine upon the land in question could not have resulted in any injury to the latter, of which he could complain as against the former, unless, at the time the representations were made, it was understood, with Hubbard's knowledge, that Gillen and Monroe were to surrender their purchase, and that Marshall was to take their place with reference to the land and pine. Under such an arrangement, Gillen and Monroe would be released from their obligations to Hubbard, while Marshall would occupy the position of a purchaser of the land and the pine, the title remaining in the plaintiff. The evidence, however, fails to connect Hubbard with any such understanding or arrangement. The evidence shows nothing more, as between the parties to this suit, than a purchase by Marshall of certain property rights which Hubbard held, including Gillen and Monroe's obligation to him in reference to the land in question. Marshall was aware of the extent of that obligation, and took from Hubbard the writing of May 23, 1874, which recites that Hubbard had sold and assigned to him "all his right, title, and interest in and to a certain contract executed and entered into by and between the said Stephen Hubbard, Nicholas Gillen, and Hugh Monroe, which said contract is dated 23d of May, 1873,"—Hubbard reserving the right to enforce the covenants contained in that contract in his own interest and behalf, in case of default in the payment of either of the notes executed by Marshall to him. So clearly, in our judgment, does the evidence show that this was the only contract between the parties to this suit, that a verdict based upon any other view ought to have been set aside.

Giving the defendant the benefit of every inference that could have been fairly drawn from the evidence, written and oral, it was insufficient to authorize a verdict in his favor. Such being the case, a peremptory instruction for the plaintiff was proper. *Pleasants* v. *Fant,* 22 Wall. 116, 143; *Montclair* v. *Dana,* 107 U. S. 162; *Randall* v. *Baltimore & Ohio Railroad,* 109 U. S. 478, 483; *Anderson County* v. *Beal,* 113 U. S. 227, 241; *Baylis* v. *Travellers' Ins. Co.,* 113 U. S. 316, 320.

The judgment is

*Affirmed.*