WILLIAM JEX et al., Appellants, *v.* ADOLPH D. STRAUS et al., Respondents.

In order to justify a recovery of damages for fraud and misrepresentation, it must appear that the injury complained of proceeded so directly from the wrongful acts that, according to common experience and the usual course of events, it might, under the particular circumstances, have reasonably been expected, and the damages must be its natural and proximate consequence.

Plaintiff's complaint alleged in substance that defendants chartered a vessel for the use of D. and others, who were engaged, in viola-

tion of the neutrality laws, in organizing a hostile and revolutionary enterprise against a country friendly to the United States, and, with knowledge of the facts, purchased arms and ammunition for such unlawful enterprise, and then, by means of false and fraudulent representations that D. was a friend about to visit different places in Nicaraugua on a pleasure trip, and desired a letter to aid him in procuring information about the people and country, induced plaintiffs to give them a letter introducing D. to N., plaintiffs' agent at Corn island, which letter they delivered to D., with another from them to N., stating they desired him to furnish provisions and supplies for said vessel, and they would honor drafts which its captain was authorized to draw upon them; that D., on his arrival at Corn island, presented the letter to N., and subsequently the captain of said vessel, "by concealing his true character, or by threats or fraud," procured from N. certain moneys and supplies belonging to plaintiffs, for which they had not been paid; that D. landed at Corn island and, with his followers, "unlawfully and improperly entered plaintiffs' buildings and property there;" that a naval officer of the United States, unjustly suspecting that plaintiffs were lending aid to the unlawful enterprise, forcibly entered upon their premises, seized one of their vessels, interrupted their business and injured their credit. On demurrer to the complaint, *held*, that it failed to set forth a cause of action; that there was no relation of cause and effect between the letter of introduction and the acts resulting in loss. Reported below, 23 J. & S. 52.

(Argued June 26, 1890; decided October 7, 1890.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 1, 1887, which affirmed an interlocutory judgment sustaining a demurrer to plaintiffs' complaint.

This action was brought to recover damages alleged to have been caused by fraudulent misrepresentation.

The complaint alleged in substance the following facts: Plaintiffs, for some years prior to June 30, 1886, were engaged in trade between the city of New York and the Central American states and owned various warehouses and other property at Corn island, within the jurisdiction of the Mosquito government, at which point one Nelson was their agent. December 14, 1885, the defendants, who were then merchants in the city of New York, applied to plaintiffs for a letter to their said agent introducing one Emilio Delgado; they represented to

the plaintiffs that said Delgado was a friend, unacquainted with Central America, who was about to visit different places in Nicaraugua on a pleasure trip and desired the letter to aid him in obtaining information about the people and country. Relying on these representations and having no suspicion of the real character or purpose of Delgado, the plaintiffs gave them a letter introducing him to said Nelson.   The defendants, however, knew at the time that said Delgado was not a stranger visiting the country for the first time, and that he was an intimate friend and associate of Marco Aurilio Soto, ex-president of Spanish Honduras, who was then organizing a hostile and revolutionary expedition against that government.   The defendants also concealed from the plaintiffs the fact that they had chartered a vessel, known as the " City of Mexico," for the use of said Soto and Delgado, and that they had purchased arms and ammunition for them in their revolutionary designs, well knowing that the plaintiffs would have refused to give said letter if they had known of the defendants' purpose in obtaining it.   The defendants, without the knowledge or authority of the plaintiffs, also wrote a letter to said Nelson, stating that they had instructed their agents at Kingston, Jamaica, to ship some goods to him, and requesting him to hold them subject to the disposition of said Delgado, and to carry out all his instructions as to the re-shipment of the same per the " City of Mexico," or otherwise.   The defendants further stated in their letter to Nelson that they desired him to furnish provisions and supplies to said vessel, and that they would honor the drafts which they had authorized her captain to draw upon them for all of her expenses.   They delivered both of the letters to Delgado, who sailed from New York on the " City of Mexico " December 31, 1885.   Some time before, the defendants, acting as the agents of Soto and Delgado, and knowing the unlawful character of their enterprise, had purchased an armament for said vessel, and had attempted to ship the same thereon, but were prevented by the vigilance of the custom-house authorities at New York.   Thereupon they shipped the arms to Kingston for transhipment on their arrival at that port to Corn island,

where they were to be put on board the "City of Mexico." They intended to employ the plaintiffs and their agent Nelson in the execution of this plan, and for that purpose procured the letter of introduction and wrote to Nelson, as aforesaid. On the arrival of Delgado at Corn island, January 22, 1886, he presented both of the letters to Nelson, and subsequently the captain of said vessel, "by concealing her true character, or by threats or fraud," procured from him, for her use, certain moneys and supplies belonging to the plaintiffs of the value of $300, no part of which has been paid. Mr. Nelson was not authorized to furnish supplies or money "to any such vessel," and the same "were procured * * * through fraud;" he had no knowledge of the contemplated expedition until after the arrival of Delgado at Corn island, and "at no time did he participate therein or lend any aid thereto." While the "City of Mexico" remained at Corn island awaiting the arrival of the arms from Jamaica, the said Delgado and the captain and others from the crew and partially armed force on board said vessel, "unlawfully and improperly entered plaintiffs' buildings and property, held meetings and made public speeches, in which said Delgado and others announced their intention of proceeding with said steamship to land an armed force upon the soil of Spanish Honduras, in order to overthrow her government." The arms, however, did not reach Nelson, as, upon their arrival at Kingston, they were shipped back to New York by the British authorities at that place. Thereupon, about January 20, 1886, the defendants caused them to be again shipped from New York upon the steamer "Fram," to be delivered by her to the "City of Mexico," and, without the knowledge of the plaintiffs, wrote Nelson to that effect, and that the goods would be consigned to him, and requesting him to re-ship them on the "City of Mexico." In the meantime, Delgado had applied to Nelson for a schooner of the plaintiffs so as to send to Kingston for the arms, but his request was refused, and upon learning that the arms were not at Kingston, he sailed to San Andreas island with the "City of Mexico," which soon after was captured by the United States navy and

condemned by the United States Admiralty Court to be sold for
violating the neutrality statutes. (U. S. R. S. §§ 5281–5291.)
Shortly after the departure of the "City of Mexico" from
Corn island two ships of war of the United States arrived at
that place, and the commander, on learning that Delgado
brought letters from New York to Nelson, and that the arms
were to have been shipped from Kingston, consigned to him,
assumed that the plaintiffs or their agent had some connection
with the illegal expedition and forcibly entered upon plaintiffs'
premises, searched them and took temporary possession of the
schooner "Transport," belonging to them, and thereby inter-
rupted their business, subjected them to unjust suspicions and
greatly injured their credit. Upon becoming satisfied of their
innocence, however, the commander released their vessel and
property and withdrew from Corn island. The plaintiffs fur-
ther allege that the injuries to which they were thus subjected
were caused solely by the fraudulent statements and acts of the
defendants; that they were ignorant of the facts at the time
they gave the letter of introduction, and that by reason of the
premises they have sustained damages to the amount of $10,000.

The defendants demurred to the complaint upon the ground
that it does not state facts sufficient to constitute a cause of
action, and because pretended causes of action are improperly
joined therein in that an alleged cause of action for fraud and
false representations are joined with an alleged cause of action
for trespass to real property.

*J. Hampden Dougherty* for appellants. Under our system
of pleading it is sufficient to set forth in the complaint a con-
cise statement of the facts constituting the plaintiffs' claim.
(Code Civ. Pro. § 431.) The complaint states a cause of
action. (Code Civ. Pro. § 490; *Carter* v. *Kemp,* 40 Hun,
250; *F. F. Ins. Co.* v. *Baldwin,* 37 N. Y. 648; *Nellis* v.
*Deforest,* 16 Barb. 61; *Dodge* v. *Colby,* 108 N. Y. 445.) The
defendants are liable in trover for the fraudulent conversion
of the provisions and supplies which they, through the agency
of the captain of the "City of Mexico," procured from the

plaintiffs' agent at Corn island. (*Cosgrove* v. *Ogden*, 49 N. Y. 255 ; *Ochsenstein* v. *Shapley*, 85 id. 220 ; *Mott* v. *C. I. Co.*, 73 id. 543 ; *Mayer* v. *Dean*, 115 id. 561; *People* v. *Tweed*, 5 Hun, 382 ; *Cuyler* v. *McCartney*, 40 N. Y. 221 ; *R. P. A. Co.* v. *Warner*, 1 Wkly. Dig. 204 ; 62 N. Y. 651 ; *Day* v. *Woodworth*, 13 How. Pr. 362, 371 ; *Barry* v. *Edmunds*, 116 U. S. 550 ; *Wilde* v. *Hexter*, 50 Barb. 448 ; *Cook* v. *Ellis*, 6 Hill, 446 ; Sedg. on Dam. [5th ed.] 517, 534 ; *Hamilton* v. *T. A. R. R. Co.*, 53 N. Y. 28 ; *Lane* v. *Wilcox*, 55 Barb. 615 ; Field on Dam. § 2.) The defendants constructively committed a trespass upon the property of the plaintiffs at Corn island. They were not direct trespassers, but they are, nevertheless, liable in case for the trespass committed by those whom they authorized to visit plaintiffs' premises for the purpose of decoying Nelson and making him their confederate. (1 Chitty on Pl. 142, 145 ; *Davis* v. *Newkirk*, 5 Den. 92, 95 ; *Morgan* v. *Varick*, 8 Wend. 587 ; *Wall* v. *Osborn*, 12 id. 39 ; *Blake* v. *Jerome*, 14 Johns. 406 ; *Guille* v. *Swan*, 19 id. 381 ; *Smith* v. *Felt*, 50 Barb. 612 ; *Percival* v. *Hickey*, 18 Johns. 257.) If it were possible to consider the complaint as stating two causes of action, they are not the causes of action which the defendants claim are improperly joined.; certainly no claim is made for trespass to real property. (1 Chitty on Pl. 142 ; Code Civ. Pro. § 490 ; *Bebinger* v. *Sweet*, 1 Abb. [N. C.] 263, note ; *People* v. *Tweed*, 5 Hun, 352 ; 63 N. Y. 194.) The other injuries sustained by the plaintiffs are the proximate result of the defendants' tortious act. (Field on Dam. § 32 ; *McAfee* v. *Crofford*, 13 How. [U. S.] 447 ; *Ins. Co.* v. *Tweed*, 7 Wall. 44, 46, 47, 52 ; *Guille* v. *Swan*, 19 Johns. 381 ; *Vandenburgh* v. *Truax*, 4 Den. 404 ; 1 Addison on Torts, 6 ; *Scott* v. *Shepherd*, 2 W. Bl. 892 ; *Kellogg* v. *C. & N. W. R. Co.*, 26 Wis. 223 ; *Lowery* v. *M. R. Co.*, 99 N. Y. 158 ; *Ryan* v. *N. Y. C. R. R. Co.*, 35 id. 210 ; *O'Neill* v. *N. Y., O. & W. R. R. Co.*, 115 id. 585 ; *Hill* v. *N. R. Co.*, 9 B. & S. 303 ; *Pollett* v. *Long*, 56 N. Y. 200 ; *Blewitt* v. *Hill*, 13 East. 14 ; Sedg. on Dam. 50.) It cannot be justly contended that the action of the United States naval officers was not the natural conse-

quence of the defendants' conduct. (*U. S.* v. *Malek Adhel*, 2 How. [U. S.] 210 ; *U. S.* v. *Smith*, 5 Wheat. 153 ; *U. S.* v. *Holmes*, Id. 412 ; *The Ambrose Light*, 25 Fed. Rep. 408 ; U. S. R. S. §§ 4293–4298 ; *The Mariana Flora*, 11 Wheat. 40 ; Naval Regulations [1876], chap. 20, § 18 ; *The Palmyra*, 12 Wheat. 1 ; U. S. R. S. §§ 970, 5287 ; *U. S.* v. *Hogan*, 18 Fed. Rep. 529 ; *Stacey* v. *Emery*, 97 U. S. 642, 646 ; *Locke* v. *U. S.*, 7 Cranch. 339 ; *Stoughton* v. *Dimick*, 3 Blatchf. 356, 358 ; *The City of Mexico*, 25 Fed. Rep. 924.) The argument of the defendants' counsel that these officers exceeded their powers in entering upon plaintiffs' property situated in a foreign jurisdiction, is untenable. (1 Kent's Comm. 121 ; *The Sir William Peel*, 5 Wall. 517 ; *The Adela*, 6 id. 266 ; *The Purisima Concepcion*, 60 Rob. 45.)

*W. W. MacFarland* for respondents. The complaint fails to show any legal relation between the letter of introduction and the events alleged to have followed. (*Cook* v. *Warren*, 88 N. Y. 40 ; *Clark* v. *Dillon*, 97 id. 370 ; *Harrison* v. *Nixon*, 9 Pet. 483 ; *Bradley* v. *Converse*, 4 Clif. 365 ; *Hutchins* v. *Hutchins*, 7 Hill, 104.) The complaint must show that the plaintiffs have sustained pecuniary damages, and that the fraud or wrong complained of was the natural, direct and reasonable cause of damage. This complaint does not comply with the rule. (*Crain* v. *Petrie*, 6 Hill, 522 ; *Knight* v. *Wilcox*, 14 N. Y. 416 ; *Lynch* v. *Knight*, 9 H. L. Cas. 577 ; *Moore* v. *Meagher*, 1 Taunt. 39 ; 1 Smith's L. C. 482, 486 ; *Vicars* v. *Wilcox*, 8 East. 1 ; 2 Smith's L. C. 484 ; *Collins* v. *Cave*, 4 H. & N. 225 ; 6 id. 131 ; *Moore* v. *Adams*, 2 Chitty, 198 ; *Anthony* v. *Slade*, 11 Metc. 298 ; *Ward* v. *Weeks*, 7 Bing. 211 ; *Hovey* v. *Felton*, 11 C. B. [N. S.] 142 ; *Boyce* v. *Bailiffe*, 1 Comp. 58 ; *Brown* v. *Cummings*, 7 Allen, 507 ; *Chidsey* v. *Canton*, 17 Conn. 475 ; *Eames* v. *N. E. W. Co.*, 11 Metc. 370 ; *Hutchins* v. *Hutchins*, 7 Hill, 104 ; *Alsop* v. *Alsop*, 5 H. & N. 534 ; *Kelly* v. *Partington*, 5 B. & A. 645 ; *Hoadley* v. *T. Co.*, 115 Mass. 304 ; *Patch* v. *City of Covington*, 17 B. Mon. 722 ; *Ashley* v. *Harrison*, Peake,

194.) There does not appear to have been anything, on general principles, unlawful in the enterprise in which Delgado was engaged. (Hall on Inter. Law, 79, 80, 555, 564, 566, 568, 571, 572, §§ 24, 208 ; *U. S.* v. *Quincy*, 6 Pet. 445.)

Vann, J. According to the complaint, such pecuniary damages as the plaintiffs sustained were caused by the following acts only, to wit : (1) The captain of the " City of Mexico " " by concealment of her true character, or by threats or fraud," procured from the agent of the plaintiffs certain money and supplies belonging to them, for which they have not been paid. (2) General Delgado landed at Corn island from said vessel with certain of his followers and " unlawfully and improperly entered plaintiffs' buildings and property," where they held meetings and made speeches, announcing their intention of overthrowing by armed force a government friendly to the United States. (3) A naval officer of the United States, unjustly suspecting that the plaintiffs were lending aid to the violation of our neutrality laws, forcibly entered upon their premises, seized one of their schooners, interrupted their business and thus injured their credit.

Unless the defendants are legally responsible for one or more of these acts, it is obvious that the complaint sets forth no cause of action against them. It is not alleged that they ever authorized, promoted or even contemplated any of said acts or that they, either directly or indirectly, ratified or approved of them. They were engaged as merchants in aiding General Delgado in organizing his expedition by purchasing and transporting arms and munitions of war for him, but they did not authorize the captain of the " City of Mexico " to make threats or practice fraud in order to procure supplies for that vessel nor instigate the trespass committed upon private property  It is true that they requested the agent of the plaintiffs to sell supplies to the vessel and agreed to honor the drafts drawn in payment. If the action were on contract there might be a recovery for the amount contracted for, but it proceeds in tort and seeks to recover for

fraud and unlawful violence. Certain representations of the defendants to the plaintiffs, made with knowledge of, but without disclosing certain facts, are all that the complaint has to rest upon, and unless it shows a logical connection between those representations and the acts that resulted in pecuniary loss, there is no cause of action alleged. What were the representations? The defendants, knowing and concealing the hostile purpose of General Delgado, falsely represented him as an ordinary traveler about to visit Central America and desiring a letter of introduction to the agent of the plaintiffs, to aid him in getting information about the people and country. The letter was thus procured and the force of the representations ended in the letter, which thence-forward was the only link connecting the representations with the acts resulting in injury to the plaintiffs. The contents of the letter are not set forth, but as it is characterized as a letter of introduction, presumptively it simply made General Delgado acquainted with Mr. Nelson without accrediting or recommending him. What connection could such a letter have with the subsequent acts of the captain of the steamship in procuring supplies by threats and fraud, or of General Delgado in trespassing upon property of the plaintiffs or with the unwarranted proceedings of the naval officer? Clearly there was no relation of cause and effect between the letter and the acts resulting in loss, yet unless the damages sought to be recovered are " the legal and natural consequence of the wrong complained of, proceeding exclusively from that and not from the improper act of a third party induced thereby," there can be no recovery. (*Crain* v. *Petrie*, 6 Hill, 522.)

The law requires that the injury must proceed so directly from the wrongful act that according to common experience and the usual course of events it might, under the particular circumstances, have reasonably been expected. (1 Sutherl. on Dam. 21; 1 Sedg. on Dam. 90; 2 Greenl. on Ev. § 256; 1 Addison on Torts, 6; *Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y. 210; *Knight* v. *Wilcox*, 14 id. 413, 416; *Hutchins* v. *Hutchins*, 7 Hill, 104; *Lynch* v. *Knight*, 9 H. L. Cas. 577.)

To justify the recovery of damages, they must be the natural and proximate consequence of the act complained of. (Id.) These principles are elementary and when applied to the facts of this case show that, however reprehensible in morals the conduct of the defendants may have been, it afforded the plaintiffs no basis for legal redress.

The letters written by the defendants to Mr. Nelson, contained no misrepresentation, and even when considered in connection with the letter of introduction add nothing to its force and lend no strength to the plaintiffs' case.

We think that the complaint fails to set forth a cause of action against the defendants, and that the demurrer was properly sustained by the courts below.

The judgment should be affirmed, with leave to the plaintiffs to amend upon payment of costs.

All concur.

Judgment affirmed.