(89 Misc. Rep. 525)

### DEYO et al. v. HUDSON et al.

(Supreme Court, Trial Term, Broome County. March, 1915.)

1. FRAUD ☞3—CONSTITUENTS OF ACTION.
  The essential constituents of an action based on fraud are representation, falsity, scienter, deception, and injury.
  [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 1; Dec. Dig. ☞3.
  For other definitions, see Words and Phrases, First and Second Series, Fraud.]

2. FRAUD ☞12—BASIS OF ACTION—PROMISE.
  A promise by defendants' agent to notify plaintiff if a member of plaintiff's firm did any more trading in stocks in defendants' office, not being a statement of an existing fact, could not be the basis of an action for fraud, though, if the promise had been kept, the embezzlement by such member of securities and moneys belonging to plaintiff's clients would have been prevented.
  [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 14; Dec. Dig. ☞12.]

3. FRAUD ☞16—BASIS OF ACTION—FAILURE TO DISCLOSE FACT.
  Fraud could not be predicated on the fact that defendants' agent failed, at the time of making such promise, to disclose that such member of plaintiff's firm was then trading in stocks with defendants, where the agent was not questioned with reference thereto.
  [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 15; Dec. Dig. ☞16.]

4. FRAUD ☞18—SUPPRESSION—CONFIDENTIAL RELATION.
  Suppression is a "fraud" only when the concealment is of material facts and there is such a relation of trust and confidence between the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

parties that one party is under some legal or equitable duty to give full information to the other, which the other has a right to know.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 16; Dec. Dig. ⊕⇒18.]

5. DAMAGES ⊕⇒20—PROXIMATE CAUSE—CONCEALMENT OF STOCK TRANSACTION.
Damages sustained by a partnership by reason of embezzlement, by a member thereof, of securities and moneys belonging to the firm's clients, were not recoverable as the proximate and natural cause of the concealment by defendants' agent of the fact that such member was speculating in stocks, where such agent did not know of prior embezzlements by such member, and had no reason to believe that the continuation of the member's stock transactions would induce him to commit a crime.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 55–57; Dec. Dig. ⊕⇒20.]

Action by Israel T. Deyo and another against Charles I. Hudson and others. On motion for nonsuit and dismissal of complaint. Granted.

Harvey D. Hinman, of Binghamton, for plaintiffs.

Worcester, Williams & Saxe, of New York City, and Curtiss, Keenan & Tuthill, of Binghamton (John Godfrey Saxe, of New York City, and H. G. Seipp, of Brooklyn, of counsel), for defendants.

McCANN, J. [1] This action is based on fraud. The essential constituents of such an action are:

"(a) A false representation, (b) known to be such, made or authorized or caused to be made by the defendant, (c) calculated and intended to influence the action of others, which came to the knowledge of the plaintiff, and (d) in reliance upon which he, in good faith, acted, and (e) thus suffered the injury, of which he complains"

—or, more tersely stated, representation, falsity, scienter, deception, and injury. Brackett v. Griswold, 112 N. Y. 454, 20 N. E. 376.

[2] I am of the opinion that the plaintiffs cannot recover in this action because of their failure to establish at least one of the essential elements in an action for fraud, to wit, the element of falsely representing or of fraudulently concealing a material fact. The theory upon which this action is based is that the plaintiffs were damaged by the defendants, by reason of the fact that William B. Carver was retained as a member of plaintiffs' firm, after the discovery of the fact that he was an embezzler, and that by such retention he caused his copartners to sustain great losses to clients, which losses were the result of the stealing by Carver of certain securities and moneys belonging to such clients, and for the repayment of which the plaintiffs were liable, as copartners of Carver.

It is claimed that Carver was retained in the firm as the result of the fraudulent representations and fraudulent concealment made by the defendants' duly authorized agent, Mitchell. An analysis of the testimony of Deyo (thus giving to the plaintiffs the benefit of the plaintiffs' version of the transactions which occurred between Deyo and Mitchell) will show that the most that Mitchell said to Deyo was that he promised that he would let Deyo know if Carver came back to do any trading in the office of the defendants. In so far as that promise

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is concerned, it is not a statement of an existing fact, "but at most of something in the future, and hence not actionable." Taylor v. Commercial Bank, 174 N. Y. 184, 66 N. E. 726, 62 L. R. A. 783, 95 Am. St. Rep. 564; Wilson v. Meyer, 154 App. Div. 302, 138 N. Y. Supp. 1048.

[3] If the action cannot rest upon this promise, then there is but one proposition left, and that is that Mitchell, at the time of the conversation with Deyo, fraudulently concealed a material fact—the fact that at the very time of the conversation Carver had commenced and was then trading with the defendants. I do not believe that any fraud can be predicated upon this concealment, because it partakes more of the nature of a deceit, to which should be applied the rule that a person may not be bound to speak, but, if he speaks, he should tell the truth. Mitchell was not questioned with reference to what Carver was doing at that time, and it seems doubtful to me if it can be held that he fraudulently concealed that fact, when that fact had not been brought into the discussion.

[4] Suppression is a fraud when the concealment is (1) of material facts, (2) where there is such a relation of trust and confidence between the parties that one party is under some legal or equitable duty to give full information to the other and which the other has a right to know. Dambmann v. Schulting, 75 N. Y. 55. I do not believe that the relation which existed between Deyo and Mitchell required Mitchell to inform Deyo as to the fact that Carver was then dealing with the defendants, nor do I believe that Deyo was legally entitled to know that fact.

[5] Furthermore, I do not see how it can be claimed that the damages which the plaintiffs sustained can be regarded as the direct or proximate or natural cause of such concealment, provided the same should be held to be fraudulent. The definition of the law on this subject, which seems to be peculiarly applicable, is taken from Jex v. Straus, 122 N. Y. 293, 25 N. E. 478, which says:

"The law requires that the injury must proceed so directly from the wrongful act that according to common experience and the usual course of events it might, under the particular circumstances, have reasonably been expected."

In the analysis of this definition the plaintiffs claim that "common experience and the usual course of events would lead one reasonably to expect" that Carver, having once committed the crime of stealing thousands of dollars from the clients of his firm, would again do the same, provided his transactions with the stock market continued. Such argument has much force, but we must consider, in connection with this, that Deyo did not reveal to Mitchell the fact that Carver had stolen these funds, but stated to Mitchell that his fear in retaining him in the firm was, not that he might steal trust funds, but that, if their customers and clients knew that a member of their firm was speculating in stocks, they would not trust the firm. It seems to be a strained conclusion, under this version of the matter, to hold that Mitchell, without knowledge of the fact that Carver had stolen, should immediately jump to the conclusion that if Carver remained in the firm he would steal.

Having in mind the language above quoted from Jex v. Straus, is it fair to say, with the knowledge that Mitchell had at that time, or, what more properly might be said, with the lack of knowledge which Mitchell had at that time, that he reasonably ought to have expected that if Carver remained a member of plaintiffs' firm that he would have stolen money from the firm's clients? That is what must be held in order to sustain plaintiffs' theory of proximate cause. It is unnecessary to discuss the question of damages or the various other questions which have been raised involving the numerous elements of an action of fraud. The various classes of claims raising numerous questions as to the liability of the plaintiffs, at the request of the plaintiffs, have all been submitted to the jury, and special verdicts taken thereon, so that a new trial need not be ordered in case a higher court should disagree with me as to the main proposition involved.

Having come to the above conclusion, I hold that the defendants' motion for nonsuit and for the dismissal of the complaint, which was reserved until after the verdict, should be granted, and an order may be prepared accordingly.

Ordered accordingly.