**BOATMEN'S NAT. CO. v. M. W. ELKINS & CO., Inc., et al.**

**M. W. ELKINS & CO., Inc., v. BOATMEN'S NAT. CO. et al.***

Nos. 9564, 9565.

Circuit Court of Appeals, Eighth Circuit.

Feb. 3, 1933.

*Rehearing denied March 20, 1933

Charles Claflin Allen, Jr., of St. Louis, Mo., and Charles T. Coleman, of Little Rock, Ark. (Walter G. Riddick, of Little Rock, Ark., on the brief), for Boatmen's Nat. Co.

Wallace Townsend, of Little Rock, Ark. (L. P. Biggs and S. S. Jefferies, both of Little Rock, Ark., on the brief), for M. W. Elkins & Co., and Union Trust Co.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

The Boatmen's National Company is an investment company, engaged in business at St. Louis, Mo.; M. W. Elkins & Co., is a corporation, organized under the laws of the state of Arkansas, and engaged in buying and selling bonds and other securities at Little Rock, Ark., while the Union Trust Company is a banking corporation, organized under the laws of Arkansas, and doing a banking business at Little Rock, Ark.

The Boatmen's National Company, plaintiff below, seeks to recover of M. W. Elkins & Co., Inc., and the Union Trust Company, $8,572.27, with interest, as damages suffered by it in a bond transaction, the material facts of which may be summarized as follows:

In February, 1931, the county judge of Pulaski county, Ark., initiated proceedings for a supplemental bond issue for that county, and on February 21, 1931, entered an order to the effect that the indebtedness of the county on December 7, 1924, was $646,012.65, of which the sum of $350,000 had been refunded into bonds of the county, leaving a balance of $269,012.65 of floating or warrant

indebtedness which could be transformed into refunding bonds of the county.

On January 15, 1931, the Elkins Company offered to buy an issue of $296,000 of Pulaski county refunding bonds, dated March 1, 1931, bearing 6 per cent. interest, payable semiannually, subject to the right to convert the bonds from 6 per cent. to 4¾ per cent. bonds, and to pay for the same on the basis of 6 per cent. bonds. This offer contained provision that it should be subject to the securing of an unqualified approving opinion of B. H. Charles, an attorney of St. Louis, Mo. This offer was accepted by the county judge of Pulaski county, and the contract, with a nunc pro tunc order confirming it, dated April 11, 1931, was spread on the records of the county court. The Elkins Company elected to take 4¾ per cent. bonds, which called for an issue of $325,500, as the equivalent of an issue of $296,000 of 6 per cent. bonds. The county judge delivered the bonds to the defendant Union Trust Company, which in turn sent them to the First National Bank of Chicago for delivery to the purchasers thereof, on payment of the purchase price, and remittance to the Union Trust Company.

On April 2, 1931, the Boatmen's National Company offered to purchase from the Elkins Company $139,500 par value of these bonds. In the letter transmitting this offer it was said: "Our purchase is further subject to your furnishing us with the unqualified final approving opinion of Hon. B. H. Charles, Attorney, St. Louis. We would appreciate it very much if you would furnish us with two original copies of his opinion."

On the same date this offer was accepted by the Elkins Company. On April 4, 1931, Mr. Charles, who is referred to in the record as a bond attorney of repute, in a letter relative to this bond issue, addressed to the Elkins Company, said: "In my opinion these proceedings show that this County has lawful authority, under the Laws of the State of Arkansas, to issue these bonds, that all of the taxable property of the County is subject to the levy of a tax to pay the same, and that when said bonds shall have been delivered and paid for at a price allowed by law, they will be the legal and binding obligations of the County."

On April 7, 1931, the Boatmen's National Company advised the Elkins Company that it would not take up the bonds because the opinion of Mr. Charles was not an unqualified final opinion, and that Mr. Charles would have to have evidence that the bonds had been paid for before issuing his unqualified final opinion. Following this, correspondence and telegrams passed between Charles, the Boatmen's National Company, and the Elkins Company, in which the Elkins Company attempted to satisfy the requirements of the Boatmen's National Company by arranging for the delivery of the bonds on receipt of the money from the Boatmen's National Company, but this that company declined to accept without an unqualified approving opinion of Mr. Charles. Mr. Charles refused to give such an opinion until the county had received the money for the bonds. The Elkins Company was unable to pay for the bonds unless it could sell them and thus secure the money for the county. It then prevailed upon the county treasurer of Pulaski county to furnish a certificate, dated April 1, 1931, in which he falsely recited that the bonds had been paid for in full by the purchasers thereof "in accordance with the terms of sale and award, being $296,000 plus accrued interest, being a price not less than par, as required by law, said purchasers having fully complied with their contract."

Armed with this false certificate, the Elkins Company obtained the final approving opinion of Mr. Charles on April 10, 1931, and the Boatmen's National Company was so advised by him on that date and consummated the purchase of the bonds on April 13, 1931. By April 14, 1931, all the bonds in question had been paid for, so that the contract of sale was fully executed. In the meantime litigation was threatening with reference to this bond issue, and soon an actual suit was brought which terminated in the Supreme Court of Arkansas on June 29, 1931. Stahl, County Treasurer v. Sibeck, 183 Ark. 1143, 40 S.W.(2d) 442. That suit was commenced to determine the proper distribution of the proceeds arising from the sale of this issue of bonds in the treasurer's hands. Other parties, citizens, and taxpayers intervened, however, and attacked the whole proceedings forming the basis of this supplemental bond issue. The trial court sustained the bond issue, except for the sum of $67,287, but, on appeal, the Supreme Court of Arkansas held the entire proceedings without authority and the bonds void, on the ground that under the statutes and Constitution of Arkansas, the order of the county court authorizing the issue of refunding bonds in the sum of $350,000, the first issue of refunding bonds above referred to, became res judicata and exhausted the power of the county court to make any further orders respecting refunding bonds. The court, in disposing of the matter, said: "It appears that the total

216

purchase price of the bonds is held in the county treasury and they (holders of the bonds) may therefore receive back their money on surrender and cancellation of said bonds illegally issued."

The county court, on July 9, 1931, pursuant to this decision, directed the county treasurer to make refund to the holders of the bonds. The Boatmen's National Company had paid the Elkins Company $135,562.19 for its bonds, but it received from the county, on surrender of the bonds, only $126,989.-92, or $8,572.27 less than it had paid. This represented the profit received by the Elkins Company on the sale of these bonds. It is to recover this amount that the present action was brought; the Union Trust Company being joined as a defendant on the ground that it knowingly participated in the fraud alleged to have been perpetrated upon the plaintiff. The complaint sets out the alleged facts of the transaction involved, and charges the defendants with fraud and deceit. The lower court, at the conclusion of the evidence, directed the jury to return a verdict in favor of the plaintiff and against the Elkins Company for the amount claimed, but directed a verdict of dismissal as to the Union Trust Company. From the judgment entered against it, the Elkins Company has appealed, and, from the judgment of dismissal as to the Union Trust Company, the Boatmen's National Company has appealed.

On the appeal of the Elkins Company it is contended that the evidence does not show that the representation contained in the false receipt was material, or that it was the proximate cause of plaintiff's damage.

On the appeal of the Boatmen's National Company, it is contended that the evidence not only shows the fraud and deceit of the Elkins Company, but that this fraud was knowingly participated in by the Union Trust Company, and hence the court improperly directed a verdict in favor of the Union Trust Company. In turn, the Union Trust Company denies that it knowingly participated in any fraud, and also contends that the representation made was not material, nor the proximate cause of plaintiff's damage.

To sustain an action for damages for fraud and deceit, the representation made (1) must have been as to material facts; (2) it must have been knowingly false; (3) it must have been made with the intention that it should be acted upon by the person to whom made; (4) that person must have been ignorant of its falsity; (5) he must have relied on its truth; and (6) the false representa-

tion must have been the proximate cause of the injury or damage. Kimber v. Young (C. C. A. 8) 137 F. 744; Union Pac. R. Co. v. Barnes (C. C. A. 8) 64 F. 80; Hindman v. First Nat. Bank of Louisville (C. C. A. 6) 112 F. 931, 57 L. R. A. 108; Farrar v. Churchill, 135 U. S. 609, 10 S. Ct. 771, 34 L. Ed. 246; Lord v. Goddard, 13 How. 198, 14 L. Ed. 111.

There can be no doubt of the falsity of the treasurer's receipt. Neither is there any doubt that at least the Elkins Company knew of its falsity, and it intended that the plaintiff should rely upon it, believing it to be true; and it appears without dispute that, relying thereon, plaintiff purchased the bonds from the Elkins Company. While the receipt was false and in a measure material when made, in that it induced the sale, can it be said that this fraud was the proximate cause of plaintiff's damage? True, this receipt falsely recited that the purchase price of these bonds had been paid to the county, yet it appears that thereafter the agreed purchase price was in fact all paid to the county, so that there was no direct damage to the plaintiff arising from the fact that the funds had not been received by the county at the time the receipt was issued. It is axiomatic that fraud without damage may be a moral, but not a legal, wrong. Stratton's Independence v. Dines (C. C. A. 8) 135 F. 449; Ming v. Woolfolk, 116 U. S. 599, 6 S. Ct. 489, 29 L. Ed. 740; Marshall v. Hubbard, 117 U. S. 415, 6 S. Ct. 806, 29 L. Ed. 919.

To warrant recovery for fraud, it must appear, not only that injury has been suffered, but that the fraud complained of was the proximate cause of the injury. Stratton's Independence v. Dines (C. C. A. 8) 135 F. 449; Smith v. Bolles, 132 U. S. 125, 10 S. Ct. 39, 40, 33 L. Ed. 279; Brackett v. Griswold, 112 N. Y. 454, 20 N. E. 376, 380; Jex v. Straus, 122 N. Y. 293, 25 N. E. 478, 480; Hedgepeth v. Coleman, 183 N. C. 309, 111 S. E. 517, 24 A. L. R. 232.

In Brackett v. Griswold, supra, the Court of Appeals of New York said: "In order to recover in an action for fraud and deceit, the fraud and injury must be connected. The one must bear to the other the relation of cause and effect; not, perhaps, in so close a sequence as in action on contract, but, nevertheless it must appear in an appreciable sense that the damage flowed from the fraud as the proximate, and not the remote, cause."

The same court, in Jex v. Straus, supra, said: "The law requires that the injury must proceed so directly from the wrongful act

that according to common experience and the usual course of events, it might, under the particular circumstances have reasonably been expected."

The Supreme Court, in Smith v. Bolles, supra, states the rule recognized in Stratton's Independence v. Dines, supra, as controlling on this court, as follows: " 'The damage to be recovered must always be the natural and proximate consequence of the act complained of,' says Mr. Greenleaf, (volume 2, § 256;) and 'the test is,' adds Chief Justice Beasley, in Crater v. Binninger, 33 N. J. Law, 513 [97 Am. Dec. 737], 'that those results are proximate which the wrong-doer, from his position, must have contemplated as the probable consequence of his fraud or breach of contract.' "

In the instant case, the bonds which plaintiff purchased were rendered valueless because of the decision of the Supreme Court of Arkansas, and not because the purchase price of the bonds had not been paid to the county treasurer at or prior to the time of the issuance of the county treasurer's false certificate, or the issuance of Mr. Charles' approving opinion. The wrongdoer could not possibly have contemplated that the wrongful issuance of this false certificate would result in a decision by the Supreme Court of Arkansas, holding the bonds void, nor indeed did it have any such effect.

We conclude, therefore, that the damage suffered by plaintiff was not the proximate result of the fraud committed by either of the defendants, and the court properly directed a verdict in favor of the defendant Union Trust Company.

The Elkins Company, however, is in a different position from that of the Union Trust Company. It sold these bonds to the plaintiff, and, while the arguments of counsel are based on the theory that the action is one to recover for fraud and deceit, yet the complaint sets out the entire transaction, and alleges the amount of plaintiff's damage, and is broad enough to sustain a recovery as for money had and received. There was an entire failure of consideration for the sale of these bonds by the Elkins Company to the plaintiff. Plaintiff has been partially reimbursed, but the Elkins Company still retains in its hands, as a part of the purchase price paid by plaintiff on the sale of these bonds, $8,572.27. This amount, in equity and good conscience, belongs to the plaintiff, and plaintiff was entitled, under the evidence in this case, to recover this amount as for money had and received. Champ Spring Co. v. United States (C. C. A. 8) 47 F.(2d) 1, 2; Schiffer v. Anderson (C. C. A. 8) 146 F. 457; Keyes v. First Nat. Bank (C. C. A. 8) 25 F.(2d) 684, 688; Jones v. Mutual Fidelity Co. (C. C.) 123 F. 506; Bolinger v. Giles, 125 Kan. 53, 262 P. 1022; 3 Phillips on Evidence (Am. Ed.) p. 421.

In Champ Spring Co. v. United States, supra, we said: "As has been observed the plaintiff's action is in the nature of a suit for money had and received. While this is an action at law, it is nevertheless governed by equitable principles, and it can be maintained only when one has money in his hands belonging to another, which in equity and good conscience he ought to pay over to that other. The issue in this case is: To whom does the money in equity, justice, and good conscience belong?"

And this court, in Keyes v. First National Bank, supra, in an opinion by Judge Lewis, said: "The action of assumpsit for money had and received is equitable in its essential nature and purpose. It lies for money which ex aequo et bono the defendant ought to refund. The underlying promise is only implied, imposed by law from the facts; and the imposition will not be made if unjust to defendant."

In 3 Phillips on Evidence, at page 421, supra, the rule is announced that an action for money had and received can be maintained "where the money has been received on a consideration which has wholly failed, or where the money has been obtained by fraud, deceit, or duress."

Here there has been a total failure of consideration. The Elkins Company has received from the Boatmen's National Company, and is retaining, this $8,572.27, which, in equity and good conscience, it should repay to the Boatmen's National Company. The court, therefore, correctly directed a verdict against the Elkins Company, and the judgment appealed from is affirmed.