LOKEN, Circuit Judge,
concurring in part and dissenting in part.
I concur in the court’s cogent description of this dispute and its procedural history. I join Part II.B. of its opinion, which affirms the dismissal of relator’s FCA claims relating to federal health insurance reimbursements. In Part H.A., I agree with the conclusions that relator sufficiently pleaded fraud in the inducement of the 2001 DoD contracts, and that fraud in the inducement is “a viable theory of FCA liability” established by the Supreme Court’s decision in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). But in my view, the court ends the analysis in Part II.A. prematurely, failing to take into account that this particular fraud-in-the-inducement claim suffers from the same Rule 9(b) inadequacy as the FCA complaint in United States ex rel. Joshi v. St. Luke’s Hospital, Inc. — the implicit allegation “that ‘every’ claim submitted by [Bayer] was fraudulent lacks sufficient ‘indicia of reliability.’ ” 441 F.3d 552, 557 (8th Cir.), cert. denied, 549 U.S. 881, 127 S.Ct. 189, 166 L.Ed.2d 142 (2006). Accordingly, I respectfully dissent from the decision to reverse the district court’s dismissal of the DoD contract claims.
It is hornbook law that, to warrant recovery of damages for fraud in the inducement, “it must appear, not only that injury has been suffered, but that the fraud complained of was the proximate cause of the injury.” Boatmen’s Nat’l Co. v. M.W. Elkins & Co., 63 F.2d 214, 216-17 (8th Cir.1933) (applying federal law and affirming a *881 directed verdict for defendant on this ground). In the typical dispute between private parties, a well-pleaded claim of fraud in the inducement needs no specific allegation of injury; the fraudulently induced contract is itself harm likely entitling the plaintiff at least to the remedy of rescission. But FCA claims are not typical disputes. As the court recognizes, the FCA “generally attaches liability, not to the underlying fraudulent activity, but to the claim for payment.” Supra p. 875 (quotation omitted). In my view, when the underlying fraud is fraud in the inducement, this necessarily requires plaintiff to plead some nexus between the fraud that induced the contract, and the subsequent claims for payment under the contract. This is not unlike the need to plausibly allege that a false certification of compliance with the requirements of a government program was material to the government’s decision to pay a particular claim. See United States ex rel. Vigil v. Nelnet, Inc., 639 F.3d 791, 799-800 (8th Cir.2011); United States ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 308-11 (3d Cir.2011).
The court ends its truncated analysis of this factor with the Supreme Court’s ruling in Hess that the “taint [of fraudulent inducement] entered into every swollen estimate which was the basic cause for payment of every dollar paid.” Supra p. 876, quoting 317 U.S. at 543, 63 S.Ct. 379. But in Hess, the fraud was undisclosed collusive bidding, a fraud the very purpose of which was to ensure that the government paid inflated claims submitted under the fraudulently induced contract. Likewise, in the few published cases that have upheld fraud-in-the-inducement FCA claims, the fraud ensured that the government would pay inflated claims, or would otherwise not receive the financial benefit of its bargain. See United States ex rel. Longhi v. Lithium Power Tech., Inc., 575 F.3d 458, 473 (5th Cir.2009) (the government’s benefit of the bargain, “to award money to eligible deserving small businesses ... was lost as a result of the Defendant’s fraud” in inducing the grants), cert. denied, 559 U.S. 1067, 130 S.Ct. 2092, 176 L.Ed.2d 722 (2010); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 791-94 (4th Cir.1999) (fraud that allegedly induced paying more to a subcontractor survived Rule 12(b)(6) dismissal); Murray & Sorenson, Inc. v. United States, 207 F.2d 119, 123 (1st Cir.1953) (fraud “increasing the price which the government eventually has to pay”).
By contrast, the fraud in the inducement alleged by Simpson — failing to disclose a known risk to patients prescribed Baycol' — • did not necessarily have the effect of increasing the amounts paid for reimbursement of claims submitted under the DoD contracts. The only damage allegation relating to the DoD contracts in Simpson’s 92-page Second Amended Complaint was that “the Government paid money to Bayer for a drug that it would not have purchased had it known the full truth.” But that was harm resulting from the underlying fraud, not a plausible allegation that the government was harmed by paying false claims under the DoD contracts. With or without the contracts at issue, DoD physicians would have prescribed statin drugs to military personnel who needed to lower their cholesterol. There is no allegation that DoD paid more for Baycol than it would have paid for a different statin. There is no allegation that the government paid damages to DoD patients who were prescribed Baycol and developed rhabdomyolysis. For this reason, Simpson failed to state a plausible FCA claim simply by alleging fraud in the inducement. To plead this alleged fraud with the partic *882 ularity Rule 9(b) requires, she needed to allege specific harm resulting from specific false claims submitted under the fraudulently induced DoD contracts. “[Ajllegations of product defects and consumer injury” do not cure deficiencies in an FCA complaint. United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 824 (8th Cir.2009).
An FCA relator such as Simpson has Article III standing only because Congress in the FCA partially assigned the government’s damage claim for the “injury in fact” allegedly suffered when it pays a false claim. Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 773 & n. 4, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). Here, Simpson alleged no injury in fact to the government, only that Bayer improperly benefited from fraudulently inducing the DoD contracts. If true, that undoubtedly caused “injury to [the government’s] sovereignty arising from violation of its laws.” Id. at 771, 120 S.Ct. 1858. But a claim for that injury lies beyond what the government assigned to Simpson in the FCA. Accord United States ex rel. Willard v. Humana Health Plan, Inc., 336 F.3d 375, 386 (5th Cir.2003) (“[T]he government must suffer an injury in fact for there to be standing.”). Accordingly, I would affirm dismissal of her DoD contract claims.