SCHOENEMAN et al. v. CHAMBERLIN.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. SALE ON CREDIT—REPLEVIN—MISREPRESENTATIONS.

In replevin by sellers against a buyer's assignee, on the ground that the goods were obtained on credit by misrepresentations as to the amount of his stock, it is reversible error for the court, in declining to charge that there was no evidence that plaintiff did not rely on the misrepresentations, to state that evidence of an inspection of the stock, made by one of the sellers after the assignment, went to show that he did not rely on the misrepresentations made.

2. SAME.

A seller cannot maintain replevin against the buyer's assignee on the ground that goods were obtained by fraudulent representations, unless he relied thereon.

Appeal from trial term, Cattaraugus county.

Action of replevin by Joseph Schoeneman and others against Willis A. Chamberlin. From a judgment for defendant and from an order denying a new trial, plaintiffs appeal. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

Allen J. Hastings, for appellants.

M. B. Jewell, for respondent.

ADAMS, J. The defendant is the general assignee of the firm of Baxter & McLowry, which firm, prior to December, 1895, was engaged in the retail clothing business at the city of Olean, in this state. The plaintiffs, at the time hereinafter mentioned, were manufacturers of

clothing at the city of Philadelphia, and on the 5th day of October, 1895, they shipped to the defendant's assignors, pursuant to an order received from them, a quantity of goods, amounting in value to the sum of $2,478. These goods were sold upon credit, and, as it is claimed, upon the faith of certain written representations and statements made by the purchasers respecting their financial responsibility and standing. This action, which is replevin, is brought upon the theory that these statements were absolutely false, and that they were made with intent to defraud the plaintiffs, all of which is denied by the defendant and his assignors, and the issue thus presented was sharply contested upon the trial.

It is conceded that the written statement furnished to the plaintiffs was defective, in that it represented that certain real estate owned by one of the partners, and which was valued at $5,000, was incumbered only to the extent of $2,500, whereas, in fact, there was another mortgage of $1,400 thereon, of which no mention whatever was made; and there is much in the case which tends strongly to sustain the plaintiffs' claim that the representations were false in other material respects than the one just mentioned. This contention, however, was not only controverted upon the trial, but it was insisted that, even if it were well founded, the plaintiffs sold the goods without relying upon the truth of the representations made to them; and much stress was apparently laid by the learned trial justice upon this feature of the case, for, in the course of his charge to the jury, he repeatedly stated to them that, it mattered not how false and fraudulent the representations were, the plaintiffs could not maintain their action unless they parted with their goods in reliance thereon. This, doubtless, was a correct statement of the law applicable to cases of this character (Brackett v. Griswold, 112 N. Y. 454, 20 N. E. 376; Unckles v. Hentz, 19 App. Div. 165, 45 N. Y. Supp. 894); but at the conclusion of the charge the plaintiffs' counsel requested the court to instruct the jury that there was no evidence in the case tending to show that the plaintiffs did not rely upon the representations made to them, and that all the evidence bearing upon that question had the opposite tendency. In response to this request, the learned court said: "I decline to so charge, because Salsburg [one of the plaintiffs] did testify that he was in the store upon two occasions, inspected the goods, and went about with a man, and that he could tell in half an hour's inspection how many goods there were there." Upon a careful examination of the evidence contained in the record, we are unable to find anything which will justify this statement of the learned trial justice. The plaintiff Salsburg was a witness in his own behalf, it is true, but he did not testify that he ever inspected or made any examination whatever of the stock of goods belonging to the defendant's assignors until some time after the execution of the assignment, which was on the 26th of December, 1895, when, as he says, he was in the store and assisted in taking an inventory; and this, doubtless, is what the learned trial justice had in mind when he made the statement to which exception is taken.

It is hardly necessary to suggest that any information the witness may have obtained as regards the value of the assignors' stock of goods, in consequence of an examination and inspection made by him

in January, 1896, could, by no possibility, have had any bearing upon the question of whether or not he placed any reliance upon statements made to him or his firm in the forepart of October, 1895; and it would seem equally clear that this misdirection must have influenced the jury in a manner very prejudicial to the plaintiffs' interest,—for it permitted, if it did not in effect instruct, them to consider evidence which, in this particular connection, they had no right to consider. We are of the opinion, therefore, that the exception which the plaintiffs' counsel took to the language which we have quoted presents error which requires a reversal of the judgment and order appealed from; and this conclusion is materially strengthened by the fact that the plaintiff Salsburg testified, without qualification, that his firm did ship the goods in question upon the faith of the representations made by the defendant's assignors, while the evidence relied upon to contradict this declaration is barely sufficient to raise an issue.

Judgment and order reversed, and a new trial ordered, with costs to the appellants to abide the event.    All concur.